369 So.2d 115 (1979)
STATE of Louisiana
v.
Lewis Lee BONIFACE.
No. 62102.
Supreme Court of Louisiana.
March 5, 1979.
Stephen A. Jefferson, Monroe, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Johnny C. Parkerson, Dist. Atty., Richard C. Anzalone, Asst. Dist. Atty., for plaintiff-respondent.
DIXON, Justice.[*]
Relator, Lewis Lee Boniface, while staying at a house in Monroe, Louisiana on May 17, 1969, was arrested with seven other persons and charged with possession of a narcotic drug (marijuana), in violation of R.S. 40:962 and R.S. 40:981 (as those sections existed in 1969). Subsequently, upon motion of the district attorney, the bill of information pending against relator was nolle prossed.
In 1977 relator learned that the Monroe arrest appeared on his Federal Bureau of Investigation arrest records. Alleging that this entry has caused him irreparable harm,[1] relator filed a petition with the *116 Fourth Judicial District Court seeking to have state law enforcement officials demand return from the FBI of all arrest information incident to his Monroe arrest and to have the court seal the records of this arrest so that they would not be inspected or divulged except for good reason upon court order. On February 8, 1978 the district court denied relator's request because R.S. 44:9, which provides for the expungement of records under certain circumstances, applies only to misdemeanors, and on the date the crime in question was committed, possession of marijuana was a felony. Writs were granted to review the ruling of the district judge.[2]
The Louisiana statute on expungement of criminal records provides in part:
"B. Any criminal court of record in which there was a nolle prosequi, an acquittal, or dismissal of a crime set forth above shall at the time of discharge of a person from its control, enter an order annulling, cancelling, or rescinding the record of arrest, and disposition, and further ordering the destruction of the arrest record and order of disposition. Upon the entry of such an order the person against whom the arrest has been entered shall be restored to all civil rights lost or suspended by virtue of the arrest, unless otherwise provided in this section, and shall be treated in all respects as not having been arrested." R.S. 44:9.
The reference in Subsection B to "a crime set forth above" is to Subsection A which provides that any person who has been arrested "for violation of a state statute which is classified as a misdemeanor" may make a written motion for expungement of the arrest record under two enumerated circumstances. By Acts 1978, No. 570, the legislature added to R.S. 44:9 Subsection E which provides:
"E. No court shall order the destruction of any record of the arrest and prosecution of any person convicted of a felony, including a conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure." (Emphasis added).
(C.Cr.P. 893 provides for suspension of sentence and probation after a felony conviction).
The principal purpose of R.S. 44:9 is remedial, rather than penal. Remedial and penal statutes are distinguishable in terms of the nature of the evil sought to be remedied by the legislation; it is penal if it undertakes to redress a wrong to the public and remedial if it undertakes to remedy a wrong to the individual. 3 Sutherland, Statutory Construction, § 60.03, at 33 (4th ed. Sands, 1974). R.S. 44:9 was designed to protect individuals from future harassment and embarrassment by virtue of a criminal record. State v. Sims, 357 So.2d 1095 (La. 1978).
Remedial statutes are liberally construed to suppress the evil and to advance *117 the remedy.[3] What is called a liberal construction is ordinarily one which makes the statutory rule or principle apply in more situations than would be the case under a strict construction. Sutherland, § 60.01, at 29. This liberal construction is in favor of those individuals entitled to benefits of the statute. Davis v. United Fruit Co., 120 So.2d 273 (La.App.1960). Of course, the rule of liberal construction should not defeat the intention of the legislature.
To determine whether liberal construction of R.S. 44:9 to expunge relator's arrest would defeat the intention of the legislature, this court must consider legislative history of the statute. State v. Gyles, 313 So.2d 799 (La.1975). The legislature was aware of the possibility of applying R.S. 44:9 to felony arrests, because the 1978 amendment to the statute specifically addressed this issue and mandated in unambiguous words that a record of a felony arrest which ends in a conviction shall not be expunged. It would have been simple for the legislature to have provided that any record of a felony arrest should not be expunged; however, it did not so provide.
The legislature no longer so severely punishes the possession of marijuana. When relator was arrested marijuana was classified as a narcotic (see Acts 1960, No. 488, § 1; R.S. 40:961(19)) and a conviction for possession of marijuana then carried a mandatory minimum punishment of imprisonment at hard labor for not less than five years (see Acts 1963, No. 60, § 1, R.S. 40:981). Very shortly after relator's arrest the drug laws were amended and reenacted (see Acts 1970, No. 457 and Acts 1972, No. 634 amending and reenacting R.S. 40:961 et seq., and the statutory history in State v. Welkner, 259 La. 815, 253 So.2d 192 (1971)). Marijuana is no longer legislatively classified as a narcotic drug (see Acts 1977, No. 649, § 1; R.S. 40:961(23); State v. Jewell, 345 So.2d 1166, 1168 (La.1977)) and a first conviction for possession of marijuana now carries a penalty of $500.00 fine and/or imprisonment in parish jail for not more than six months (Acts 1978, No. 725; R.S. 40:967D).
It would be unduly harsh, and would serve no justifiable end, for this court to refuse to apply R.S. 44:9 to expunge an arrest for possession of marijuana in "violation of a state statute which is classified as a misdemeanor" today merely because it once was classified as a felony. Our refusal would continue the imposition of an inappropriate and disproportionately heavy penalty on the relator for the crime of possession of marijuana, and would violate the intention of the legislature to effect a remedial change pursuant to changing societal attitudes toward possession of marijuana. It is reasonable to believe that the legislature did not intend such a result. "The dead hand of the past, where it bars rather than leads social progress, must be narrowly limited in scope. . . ." Hall, Strict or Liberal Construction of Penal Statutes, 48 Harv.L.Rev. 748, 767 (1935).
For these reasons the ruling of the district court is reversed; the case is remanded for the district court to enter an order annulling, cancelling, or rescinding the record of relator's arrest and disposition and further ordering the destruction of the arrest record and disposition pursuant to R.S. 44:9; the order should include a request to the Federal Bureau of Investigation for return of the record and accompanying information of relator's arrest (and its disposition) for possession of marijuana.
SUMMERS, C. J., and SAMUEL, J. Ad Hoc, dissent with opinions.
SUMMERS, Chief Justice (dissenting).
The language of the statute on expungement of criminal records is clear and unequivocal. The statute provides for expungement of the record of any person who *118 has been arrested "for violation of a state statute which is classified as a misdemeanor." La.Rev.Stat. 44:9. At the time of relator's arrest on May 17, 1969 possession of marijuana was a felony. La.Rev.Stat. 40:962 and 981.
It would have been simple enough for the Legislature to make the expungement statute applicable to prior arrest and thereby entitle relator to the statute's benefits. This was not done for reasons within the prerogative of the Legislature which it is not required to disclose. The law is clearly stated and should be applied as written.
I would affirm the ruling of the trial court.
SAMUEL, Justice ad hoc (dissenting).
Insofar as the problem involved in this case is concerned, Act 570 of 1978 is confusing in that amends R.S. 44:9, which is concerned only with violations of municipal and state misdemeanors, by adding a subsection (E) concerned with felonies.[1] However, obviously nothing contained in R.S. 44:9 prior to the 1978 amendment permitted destruction of arrest and prosecution records in felony matters; and I find nothing in the 1978 amendment which indicates anything other than an intent to make certain that destruction of the records of the arrest and prosecution of any person convicted of a felony is prohibited.
The possession with which relator was charged was a felony. That a similar possession later was reduced by the legislature from a felony to a misdemeanor does not change the fact that relator was charged with a felony and not a misdemeanor. Whether destruction of the arrest record in this case would be preferred procedure in the eyes of the court is not a consideration. Arrest records in felony cases cannot be destroyed under the provisions of R.S. 44:9 as those provisions existed and now exist, before and subsequent to the 1978 amendment.
Accordingly, as I would affirm, I respectfully dissent.
NOTES
[*] Chief Judge L. Julian Samuel participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Joe W. Sanders, Retired.
[1] The harm relator alleged is:

"The U.S. Bureau of Prisons and the U.S. Parole Commission receive a copy of each prisoners F.B.I. Arrest Record and consider the information contained therein in determining whether or not to allow a prisoner to participate in the furlough program, Work release, study release, on the job training courses, in community and club activities, and, most important of all, parole consideration (see United States vs. Hudson, 16 Criminal Law Reporter, page 2470 et seq.; Tarlton vs. Saxbe [165 U.S.App.D.C. 293], 507 F.2d 1116). The kinds of prior arrests are one of the foremost reasons used by the U.S. Bureau of Prisons and the U.S. Parole Commission in denying the abovenamed rehabilitation programs and activities to a prisoner."
[2] Apparently a state court order would provide relator the relief he seeks. As noted in his brief, Department of Justice Order 556-73, § 16.34 (28 CFR § 16.34) provides:

"If, after reviewing his identification record, the subject thereof believes that it is incorrect or incomplete in any respect and wishes changes, correction or updating of the alleged deficiency, he must make application directly to the contributor of the questioned information. Upon the receipt of an official communication directly from the agency which contributed the original information the FBI Identification Division will make any changes necessary in accordance with the information supplied by the agency."
The FBI honors requests from local authority for return of arrest records. Menard v. Saxbe, 162 U.S.App.D.C. 284, 498 F.2d 1017, 1025 and n. 24 (1974); Tarlton v. Saxbe, 165 U.S.App. D.C. 293, 507 F.2d 1116 (1974); Crow v. Kelley, 512 F.2d 752, 755 (8 CA 1975).
[3] Penal statutes are strictly construed in favor of the defendant and lenity, State v. Young, 357 So.2d 503 (La. 1978), and against the state, State v. Jewell, 345 So.2d 1166 (La.1977). In the federal courts, where the nature of an act is remedial, it is construed liberally in an attempt to provide the remedy, not avoid it. Starks v. Orleans Motors, Inc., 372 F.Supp. 928 (ED La. 1974) citing Thomas v. Myers-Dickson Furniture Co., 479 F.2d 740 (5 CA 1973).
[1] It should be noted that under the one title Act 570 of 1978 amends not only R.S. 44:9 but also Articles 893 and 894 of the Code of Criminal Procedure. This could be a reason for some of the confusion.