375 So.2d 1339 (1979)
STATE of Louisiana
v.
Fred J. NETTLES.
STATE of Louisiana
v.
Thomas CONOVER.
Nos. 64359, 64358.
Supreme Court of Louisiana.
October 8, 1979.
Rehearings Denied November 1, 1979.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Leon A. Cannizzaro, Jr., Asst. Dist. Atty., for plaintiff-relator.
Loyola Law School Clinic, William J. O'Hara, III, Supervising Atty., New Orleans, Joseph LaHatte, Student Practitioner for defendant-respondent Thomas Conover.
George S. Hesni, New Orleans, for defendant-respondent Fred J. Nettles.
CALOGERO, Justice.
The question presented here is whether a trial court judge in this state has the authority to order expunged a felony arrest record where the charge has not resulted in conviction. We granted writs upon application of the state in these two cases, and consolidated them for argument.
Respondent Fred J. Nettles was arrested and charged with four felony offenses on August 18, 1978: accessory to an armed robbery (R.S. 14:25, 14:64), possession of marijuana with intent to distribute (R.S. 40:966), and the illegal possession of cocaine and illegal possession of opium, each with intent to distribute (R.S. 40:967). About forty days later the charges were refused by the Orleans Parish District Attorney's office.
Respondent Thomas Conover was arrested on November 7, 1974 for violation of R.S. *1340 40:966 (possession of marijuana) a misdemeanor, and R.S. 40:967 (possession of biphetamines) a felony. He volunteered for and was accepted into the district attorney's diversionary program and three days thereafter the charges were refused by the district attorney. Respondent thereafter successfully completed the district attorney's diversionary program.
On March 14 and 26 of 1979 the magistrate judge, Section "M" of the Criminal District Court for the Parish of Orleans granted the motions of Nettles and Conover to have the records of their arrests expunged.
The full statutory basis for permitting expungement of criminal arrest records in this state is found in R.S. 44:9.[1] That statute permits expungement of the record of arrest for violation of a municipal ordinance or of a state misdemeanor statute if the time limit for prosecuting has expired or proceedings instituted have been disposed of by dismissal, sustaining of a motion to quash, or acquittal.
Respondents' arrests (for felonies) are clearly not covered by the foregoing provisions. Nonetheless, they rely on R.S. 44:9(E) which was added by Act 570 of the Louisiana Legislative Session of 1978, and which provides that "no court shall order the destruction of any record of the arrest and prosecution of any person convicted of a felony, including a conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure." (emphasis provided)
*1341 Respondents argue that the Legislature's mandating that felony arrests which result in conviction are not to be expunged, impliedly sanctions expungement of felony arrests which do not result in convictions. While the argument is not frivolous we conclude that it is without merit.
The Legislature has simply not specifically sanctioned expungement of felony arrest records. And we are not persuaded that the Legislature intended to sanction expungement of felony arrests which do not result in conviction simply by the arguable implication which flows from their having expressly prohibited expungement of arrest records of a person arrested and convicted of a felony. Without statutory authority the courts are without power to expunge Nettles' and Conover's arrests. R.S. 44:9 does not grant such authority and we are not aware of any other Act which does so.
Louisiana Code of Criminal Procedure Article 228[2] charges peace officers making an arrest to record the name of the person arrested and the offense charged against him. The record of the arrest is a matter of public record. In the absence of statutory authority, a court's privilege to expunge matters of public record is one of exceedingly narrow scope, Rogers v. Slaughter, 469 F.2d 1084 (5th Cir. 1972). Only under extraordinary circumstances may a court order records made under statutory authority to be destroyed or expunged. See Mulkey v. Purdy, 234 So.2d 108 (Fla.1970).
Respondents rely upon our recent decisions in State v. Sims, 357 So.2d 1095 (La. 1978); State v. Bradley, 360 So.2d 858 (La. 1978) and State v. Boniface, 369 So.2d 115 (La.1979). That reliance is not well-placed.
Bradley decided that R.S. 44:9's not including as expungeable, arrests for driving while under the influence, while including as expungeable all other misdemeanor arrests, violates the equal protection clauses of the Louisiana and United States Constitutions. That case does not apply here where the arrests are for felonies.
Sims did direct the expungement of a felony arrest record within the narrow confines of a case involving Article 894 of the Code of Criminal Procedure and its liberal provision for setting aside misdemeanor convictions. The defendant pleaded guilty to possession of marijuana. The felony charge of possession with intent to distribute was dismissed as an overcharge, and the felony arrest was expunged. Counsel for the State argues that Sims was decided incorrectly. The argument is not frivolous. Nonetheless, we are not called upon here to reconsider Sims.
Nor is State v. Boniface controlling here. In Boniface the arrestee was arrested for possession of marijuana in 1969, a felony offense. The charge was nolle prossed. In 1977 at the time the arrestee filed suit to have his arrest record expunged, possession of marijuana was a misdemeanor. Although Boniface did not meet the literal requirements of the statute this Court held that in light of the change in social attitudes concerning his offense, no justifiable end would be served by refusing to apply R.S. 44:9 to expunge an arrest for violation of a state statute which had been changed to a misdemeanor, merely because the offense was once classified as a felony.
Respondent urges in the alternative that even if our statutes do not permit expungement of felony arrests the equal protection clauses of the United States and Louisiana Constitutions (14th amendment of the United States Constitution and Article *1342 I, Section 3, 1974 Louisiana Constitution) establish a basis for the expungement of felony arrests which do not lead to convictions. There is no merit to this contention.
Retention of arrest records serve important state interests which outweigh an individual arrestee's right to privacy. Walker v. Lamb, 254 A.2d 265 (Del.Ch.1969). The Seventh Circuit Court of Appeals held in Herschel v. Dyra, 365 F.2d 17 (1966) cert. den. 385 U.S. 973, 87 S.Ct. 513, 17 L.Ed.2d 436 that unless the legislature of Illinois required the Police Department of Chicago to expunge arrest records where there was no conviction, that the police department was "duty-bound to compile and retain arrest records of all persons arrested." Id. 365 F.2d at 20. The Court in Herschel held that the execution of that policy did not violate an arrestee's right to privacy. Arrest records are useful in uncovering criminal conduct, aid in setting bond, and facilitate the work of correctional institutions. Menard v. Mitchell, 328 F.Supp. 718 (D.C. 1971). Law enforcement agencies are granted broad discretionary powers concerning the information they retain, but this discretion is limited by the United States and Louisiana Constitutions under certain circumstances.[3] See Rogers v. Slaughter, 469 F.2d at 1085.
Respondents Nettles and Conover have made no showing that their cases fall within the narrow exceptions to the rule that courts may not order the destruction of public records sanctioned by statute without express statutory authority.
Respondents also claim that there is no rational basis for allowing the state to keep and disclose records of arrest for felonies when the state has accorded the right of expungement for misdemeanor arrests which do not lead to convictions. Respondents' contention is not valid. Neither the equal protection clause of the Fourteenth Amendment nor Article I, § 3 of the Louisiana Constitution of 1974 prevents the state from according different treatment to different classes. It is only when those classifications are not justified by valid state interests that a denial of equal protection may be found. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Succession of Robins, 349 So.2d 276 (La.1977). Felonies are far more serious offenses than misdemeanors. The State clearly has a valid interest in keeping arrest records of felony offenses, while allowing less serious misdemeanor arrests to be expunged.

Decree
For the foregoing reasons the rulings of the trial court granting respondents' motions to expunge their felony arrest records are reversed and the rulings vacated.
REVERSED; RULINGS VACATED.
SUMMERS, C. J., dissents.
TATE, J., dissents and assigns reasons.
TATE, Justice, dissenting.
I respectfully dissent.
The respondents Nettles and Conover were arrested for felonies but never subsequently convicted ofnor even prosecuted forthese offenses. Both respondents therefore sought and were granted expungement of their arrest records of the Orleans Criminal District Court.
The majority now vacates these expungement orders as not authorized by La.R.S. 44:9. In so doing, the majority misinterprets the 1978 amendment to that statute and ignores the import of its legislative history and of our prior court rulings relative to expungement to which this amendment was addressed.
In State v. Sims, 357 So.2d 1095 (La. 1978), construing La.R.S. 44:9, we held that a convicted misdemeanant's initial arrest *1343 for a felony could be expunged from his record. In terms, 44:9 refers only to expungement of arrests for misdemeanors. However, in view of the legislative policy of 44:9 and of other statutes, Sims held that the expungement provision of 44:9 applies, where in fact only a misdemeanor is involved, even though the arrest overcharges him with a felony. All the more should expungement be available to a defendant such as Nettles, who committed no offense at all, when incorrectly arrested for a felony due to a mistaken identification.
The Sims ruling was handed down on April 10, 1978. There can be little doubt that Senate Bill 727 (eventually enacted as Act 570 of 1978), introduced on May 1, 1978, was addressed to Sims and sought to repudiate it. The original bill proposed to add to 44:9 a subsection "E" that prohibited all expungements of felony arrests.[1]
There also can be little doubt from subsequent legislative developments that the desire to repudiate Sims and close the door on all expungement of felony records was not shared by a majority of the legislators. The Senate Committee on the Judiciary "B" immediately proposed to amend the provision by deleting the word "arrest" (thus eliminating the prohibition of expungement of a felony arrest record, but retaining a prohibition against expungement of felony prosecution and conviction records). Official Journal of the Proceedings of the Senate of the State of Louisiana, 4th Reg. Sess. at 40. (May 23, 1978). The bill was approved by the Senate in this amended form and sent to the House of Representatives. Official Journal of the Proceedings of the Senate of the State of Louisiana, 4th Reg. Sess. at 37 (May 24, 1978).
There the Committee on the Administration of Criminal Justice, in another apparent reaction to the harshness of the proposed subsection "E", deleted the entire section, substituting for it the wording which was eventually enacted into law.[2] Official Journal of the Proceedings of the House of Representatives, 4th Reg. Sess. at 13 (June 30, 1978). That wording clearly prohibits expungement of arrest and prosecution records of convicted felons only. Rather than legislatively overruling Sims, it left that holding intact with respect to expungement of felony arrests that did not result in convictions.
In State v. Boniface, 369 So.2d 115 (La. 1979), this court acknowledged without full discussion this legislative history and stated: "It would have been simple for the legislature to have provided that any record of a felony arrest should not be expunged; however, it did not so provide." 369 So.2d 115, 117.
The majority today, however, does so provide. It actually reinstates the version of this statute which was rejected by the state legislature when it refused to prohibit expungement of any felony arrest record.
Under many circumstances a court might be unwarranted in gleaning legislative authorization from the absence of legislative prohibition, as the majority feels it has been asked to do. However, the particular present judicial and legislative history unmistakably shows a legislative intention contrary to the majority's interpretation. That interpretation attributes to the legislature an intent which was deliberately rejected by the legislature in adding the 1978 amendment.
The harsh results of the majority opinion are illustrated, for instance, by the circumstances that the charges against Nettles were refused by the district attorney. So far as the record shows, the charges were *1344 completely without foundation, and the baseless arrest of Nettles involved a case of mistaken identity with the accused's brother. Yet, for the rest of Nettles' life, he has a "rapsheet" involving serious felony charges, with all the consequences in public and private shame and in prejudice in consideration for future employment that this "record" may involve.
I am completely unable to find any state interest served by refusing to expunge these baseless arrests, so as (correctly) to show no criminal record on Nettles' part. I cannot see how any state interest outweighs Nettles' right to his good name and his constitutional right of privacyin the face of the explicit guaranty of our state constitution that "Every person shall be secure. . . against unreasonable . . .invasions of privacy." [Italics mine.] La. Const. of 1974, Art. 1, Section 5.
In view of the practical disabilities that attach to having a felony arrest record, we compromise the presumption of innocence by saddling an unconvicted accused with a permanent arrest record. We do so unnecessarily and gratuitously and in the face of specific legislative intent to reject such a consequence.
I would therefore affirm the expungement orders.
NOTES
[1] Louisiana Revised Statute 44:9 provides:

"A. Any person who has been arrested for the violation of a municipal ordinance or for violation of a state statute which is classified as a misdemeanor may make a written motion to the district court for the parish in which he was arrested for expungement of the arrest record, if:
(1) The time limitation for the institution of prosecution on the offense has expired, and no prosecution has been instituted; or
(2) If prosecution has been instituted, and such proceedings have been finally disposed of by dismissal, sustaining of a motion to quash, or acquittal. If the court finds that the mover is entitled to the relief sought, for either of the above reasons, it shall order all agencies and law enforcement offices having any record of the arrest, whether on microfilm, computer card or tape, or on any other photographic, electronic or mechanical method of storing data, to destroy any record of arrest, photograph, fingerprint or any other information of any and all kinds of descriptions. The court shall order such custodians of records to file a sworn affidavit to the effect that the records have been destroyed and that no notations or references have been retained in the agency's central repository which will or might lead to the inference that any record ever was on file with any agency or law enforcement office. The original of this affidavit shall be kept by the court so ordering same and a copy shall be retained by the affiant agency which said copy shall not be a public record and shall not be open for public inspection but rather shall be kept under lock and key and maintained only for internal record keeping purposes to preserve the integrity of said agency's files and shall not be used for any investigative purpose. This Subsection does not apply to arrests for a first or second violation of any ordinance or statute making criminal the driving of a motor vehicle while under the influence of alcoholic beverages or narcotic drugs, as denounced by R.S. 14:98.
B. Any criminal court of record in which there was a nolle prosequi, an acquittal, or dismissal of a crime set forth above shall at the time of discharge of a person from its control, enter an order annulling, cancelling, or rescinding the record of arrest, and disposition, and further ordering the destruction of the arrest record and order of disposition. Upon the entry of such an order the person against whom the arrest has been entered shall be restored to all civil rights lost or suspended by virtue of the arrest, unless otherwise provided in this section, and shall be treated in all respects as not having been arrested.
C. Notwithstanding any other provision of this section to the contrary, the provisions of this section shall in no case be construed to effect in any way whatsoever the practices and procedures in effect on July 29, 1970, relating to the administration of the implied consent law.
D. Whoever violates any provision of this section shall be punished by a fine of not more than two hundred fifty dollars or by imprisonment of not more than ninety days, or both, if the conviction is for a first violation; second and subsequent violations shall be punished by a fine of not more than five hundred dollars or imprisonment of six months, or both.
E. No court shall order the destruction of any record of the arrest and prosecution of any person convicted of a felony, including a conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure."
[2] Louisiana Code of Criminal Procedure Article 228 provides:

"It is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct the person arrested to the nearest jail or police station and cause him to be booked. A person is booked by an entry, in a book kept for that purpose, showing his name and address, the offense charged against him, by whom he was arrested, a list of any property taken from him, and the date and time of booking. Every jail and police station shall keep a book for the listing of the above information as to each prisoner received. The book shall always be open for public inspection. The person booked shall be imprisoned unless he is released on bail."
[3] The federal courts have held that where mass arrests are made without legal justification or where "hippies" or other unpopular groups are arrested solely to harass them, the courts possess inherent power based on the United States Constitution to order the expungement of arrest records. Hughes v. Rizzo, 282 F.Supp. 881 (D.C.1968); Washington Mobilization Committee v. Cullinane, 400 F.Supp. 186 (D.C. 1975).
[1] Senate Bill 727, as originally introduced, provided, "Notwithstanding any other provision of law to the contrary, no court in this state shall order the destruction of any records pertaining to the arrest, prosecution OR conviction of any person for any felony." [Italics and capitalization added.] The Official Journal of the Senate for the 4th Reg. Session on May 1, 1978, p. 63, reflects the introduction of the bill.
[2] "No court shall order the destruction of any record of the arrest and prosecution of any person convicted of a felony, including a conviction dismissed pursuant to Article 893 of the Code of Criminal Procedure." (Italics mine.)