JjPEATROSS, J.
Defendant, Mark Mullings, appeals a judgment of the Workers’ Compensation Judge (“WCJ”) reducing his weekly indemnity benefits by one-half for his alleged refusal or failure to cooperate with vocational rehabilitation efforts. Plaintiff, Louisiana Workers’ Compensation Corporation (“LWCC”), has answered the appeal, seeking reversal of the WCJ’s denial of its claim for termination of Defendant’s weekly indemnity benefits on the grounds of fraud as provided by La. R.S. 23:120s.[1] For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL HISTORY

In late 1992, Defendant began suffering from bilateral carpal tunnel syndrome for which he underwent surgery. Following surgery, he allegedly developed a condition called dystonia that causes the affected muscles to involuntarily contract and cramp. Defendant suffers from dystonia in his thumbs and, occasionally, his forearms. LWCC initially denied medical treatment for this condition; and Defendant filed a disputed claim form, LDOL-WC-1008. The matter was eventually settled by a consent judgment entered into July 29,1997.
Jeanie Freeman, a vocational rehabilitation consultant for LWCC, testified that she mailed a rehabilitation plan to Defendant on August 23, 1997, but never received a reply. She also recommended a neurologist for Defendant at that time; but, instead, he selected Dr. Krzystof Kun-do as his neurologist in October 1997.
Dr. Kundo testified that Defendant informed him that repetitive grasping movements caused his symptoms to occur within one minute. Defendant also told [¡>Dr. Kundo that he was unable to hold a gun for a very long time and could not press the trigger. Defendant received Botox injections in his hands as treatment for his condition.[2]
On December 9,1997, LWCC obtained a surveillance videotape of Defendant. The videotape depicted Defendant and two other men skinning a deer. Defendant pri *207 marily watched the other men skin the deer; but, on occasion, he would use a knife to assist in the task. He was also depicted using a water hose with a twist nozzle and gripping and tying off a rope used to hang the deer up in a tree. Defendant admitted at trial that he had killed both deer shown in the December 9, 1997 videotape and that he was able to load and clean his own gun.
Following the December 9, 1997 videotape, LWCC requested that Defendant undergo a functional capacity Evaluation (“FCE”) so that work restrictions could be determined and assigned. The FCE measures a person’s strengths and ability to perform certain functions. The FCE was scheduled to be performed on January 29, 1998; but Defendant was unable, or unwilling, to complete the evaluation on that date due to alleged pain. He completed the FCÉ the following morning instead.
The FCE is designed with internal validity factors which help to determine if a person is giving his/her best effort so that a true evaluation of that person’s abilities can be made. The validity factors indicated that Defendant did not give maximum effort during the test, making the test invalid due to excessive variation and inconsistencies. Defendant testified that he was making his best effort given the excruciating pain he was suffering. William Norton, who administered the test, however, testified that Defendant’s efforts were inconsistent on activities that appeared to be different, but actually tested the same ability.
|3On February 2, 1998, Ms. Freeman wrote to Defendant’s- attorney requesting that Defendant complete a list of the types of work in which he might have an interest. Defendant’s attorney responded by correspondence on February 13, 1998, stating that the list would not serve a useful purpose since no work restrictions had been assigned and a labor market survey could not be performed.
Since the FCE was invalid and there was a lack of work restrictions to determine Defendant’s vocational abilities, the video surveillance tape was forwarded to Dr. Kundo on March 2, 1998, with a request that Dr. Kundo answer several questions. In short, Dr. Kundo opined that Defendant’s complaints in relation to the use of his hands, were not consistent with the willingness and ability to engage in the represented activities in the videotape. Dr. Kundo noted in his report of March 27, 1998, that he discussed the videotape with Defendant and that Defendant expressed that he was going to try to find a job “now.”
In July and August 1998, LWCC obtained additional video surveillance tapes of Defendant. The July videotape depicted Defendant lifting a ladder and climbing it, while occasionally holding a cordless drill in one hand and a piece of sheet metal in the other hand. This videotape also showed Defendant drilling in screws to hold the sheet metal as he repaired a lighted metal sign for his brother’s business. These activities took place over the span of approximately one hour. The August videotape depicts Defendant unloading various types of luggage and other camping-type equipment from a vehicle. Defendant testified that he assisted in chaperoning a church youth trip to Colorado and drove approximately 15 hours straight, both there and back.
On July 8, 1998, LWCC filed a disputed claim form, LDOL-WC-1008, seeking either the termination of Defendant’s indemnity benefits in accordance Lwith La. R.S. 23:1208, or, in the alternative, reduction of benefits by one-half in accordance with La. R;S. 23:1226.[3]
*208 Also in July, Defendant’s attorney sent correspondence to LWCC terminating vocational rehabilitation due to pending litigation. Dr. Kundo was provided with the July and August 1998 videotapes and was deposed in April 1999. Dr. Kundo testified that Defendant’s complaints had remained constant throughout treatment, yet his complaints did not correlate with the activity in which he saw Defendant engaged in these later videotapes. Mr. Norton also viewed the videotapes and opined that Defendant’s behavior on the videotapes was inconsistent with his behavior during the attempted testing.
This matter was tried on April 22, 1999; oral reasons for judgment were given May 27, 1999; and written reasons for judgment were given June 4, 1999. Defendant was awarded indemnity benefits, reduced by one-half for his failure to cooperate with vocational rehabilitation efforts.

DISCUSSION

La. R.S. 23:1226

Defendant asserts as error the WCJ’s liberal application of La. R.S. 23:1226 to this matter, given its penal nature. Appellate review of a question of law, which is de novo, is simply to determine whether the court below was legally correct. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237; Conagra Poultry Co. v. Collingsworth, 30,155 (La.App.2d Cir.1/21/98), 705 So.2d 1280. Although we agree that La. R.S. 23:1226 is penal in nature and should be strictly construed, we do not find |sthat the WCJ failed to apply the statute in this manner, given the facts of this case. State v. Boniface, 369 So.2d 115 (La.1979).
In the alternative, Defendant asserts the WCJ’s finding that he failed to cooperate with an FCE is contrary to the weight of the “law and evidence” and was clearly wrong. The WCJ’s factual findings are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Mitchell v. AT & T, 27,290 (La.App.2d Cir.8/28/95), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95), 664 So.2d 456. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra; Woods v. Ryan Chevrolet, Inc., 30,206 (La.App.2d Cir.2/25/98), 709 So.2d 251, writ denied, 98-1169 (La.6/5/98), 720 So.2d 689.
The WCJ stated in her oral reasons for judgment:
Dr. Kundo and Mr. Norton said in their depositions that they thought that Mr. Mullings appeared to be engaging in activities which he said to them earlier caused him pain. The court agrees. However, the court does not agree that the LWCC has proven that Mr. Mullings was performing these activities without pain ... or ... difficulties.
[[Image here]]
The court finds that Mr. Mullings uses his best effort to engage in activities which may cause him pain when he is properly motivated.... Mr. Mullings was not motivated, apparently, to use his best efforts to cooperate with his functional capacity evaluation.
On this record, we do not find that the WCJ was clearly wrong or manifestly erroneous in her factual findings. A viewing of the videotapes in comparison to Defendant’s performance during the FCE strongly supports the WCJ’s observation that Defendant can perform activities when properly motivated. We also find it very telling that Defendant performed so inconsistently on two tests that, although performed on different devices, measured identical abilities, lifting | (¡only two pounds *209 for one and up to ten pounds on the other. The WCJ’s finding that Defendant failed to cooperate with the performance of the FCE is not clearly wrong.

La. R.S. 23:1208

LWCC asserts in its answer to this appeal that the WCJ committed error in in not forfeiting Defendant’s rights to indemnity benefits pursuant to La. R.S. 23:1208. It is LWCC’s position that Defendant intentionally lead his doctor to believe he could not perform certain activities; and he intentionally limited his abilities during the FCE and gave an inconsistent effort such that no work restrictions could be assigned. LWCC argues that these statements and representations were proven to be false by the videotapes depicting Defendant engaged in the very activities he complained he could not perform. We find no merit to this assignment.
As stated above, the WCJ found that, although Defendant was able to perform certain activities he told Dr. Rundo and Mr. Norton he could not perform, he was obviously in pain and had to use a modified grasp on some activities. We agree that this evidence does not rise to the level of false statements and representations as contemplated by the penal statute, La. R.S. 23:1208, which must be strictly construed.

CONCLUSION

For the foregoing reasons, the judgment of the trial court reducing the indemnity benefits of Defendant, Mark Mullings, by one-half is affirmed. Defendant, Mark Mullings, and Plaintiff, Louisiana Workers’ Compensation Corporation, are equally assessed with costs.
AFFIRMED.

. La. R.S. 23:1208 states, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
[[Image here]]
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

. A Botox injection can be toxic in that it contains a form of botulism and must be carefully administered.

. La. R.S. 23:1226 states, in pertinent part:
E. Refusal to accept rehabilitation as deemed necessary by the workers' compensation judge shall result in a fifty percent-reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each-week of the period of refusal.