881 So.2d 104 (2004)
STATE of Louisiana
v.
EXPUNGED RECORD (NO.) 249,044.
No. 2003-KA-1940.
Supreme Court of Louisiana.
July 2, 2004.
Opinions on Rehearing September 24, 2004.
*105 Hon. Charles C. Foti, Jr., Attorney General, Hon. James C. Downs, District Attorney, Burton P. Guidry, Asst. Attorney General, H. Bradford Calvit, Alexandria, Counsel for Applicant.
Thomas D. Davenport, Jr., W. Jay Luneau, Counsel for Respondent.
Donald W. North, Baton Rouge, Counsel for Southern University Criminal Law Clinic (Amicus Curiae).
JOHNSON, Justice.
We are called upon in this case to determine the constitutionality of LSA-R.S. 44:9(B)(1) which provides for the expungement and destruction of an arrest record when an individual was arrested for the *106 violation of a misdemeanor offense, but prohibits destruction of the arrest record when an individual was arrested for the violation of a felony offense. The trial court ruled that the statute was unconstitutional because it violated appellee's equal protection rights under the Louisiana and United States Constitutions and the Separation of Powers Doctrine. For the reasons that follow, we reverse the trial court's ruling and hold that LSA-R.S. 44:9(B)(1) is constitutional because the statutory classification is rationally related to a valid state interest.

FACTS and PROCEDURAL HISTORY
On January 9, 1998, Appellee was arrested by the Rapides Parish Sheriff's Office for the felony offenses of Obstruction of Justice, in violation of LSA-R.S.14:130.1, and False Impersonation, in violation of LSA-R.S. 14:112.1. The alleged violations occurred during the course of a criminal investigation where appellee, who at the time was a deputy marshal for the City of Monroe, allegedly interviewed a minor without proper authorization and misrepresented himself as a U.S. marshal. On September 8, 1998, after review, the Rapides Parish District Attorney's office dismissed the felony charges against appellee. Appellee then moved to have his arrest record expunged and destroyed.
The trial court ordered appellee's arrest record expunged, but not destroyed. After the time limitations for instituting prosecution of the crimes expired, Appellee filed a Rule to Modify Judgment or, Alternatively, Petition for Declaratory Judgment where he asserted that "(o)n January 9, 2002, the Petitioner became vested with the right to have the January 9, 1998 arrest record completely destroyed as if it never existed." In the alternative, Appellee argued that LSA-R.S. 44:9(B)(1) was unconstitutional because it violated his equal protection rights under the Louisiana and United States Constitutions and because the statute violated the Separation of Powers Doctrine.
On March 11, 2002, the trial court granted Appellee's motion and directed all appropriate entities to destroy all records in connection with Appellee's arrest of January 9, 1998. The Rapides District Attorney's Office appealed the decision to the Third Circuit Court of Appeal.
The Court of Appeal concluded that LSA-R.S. 44:9 provided for the expungement and destruction of misdemeanor arrest records but that there was no such provision for felony arrest records. State v. Expunged Record Number 249,044, 02-589 (La.App. 3 Cir.2002), 833 So.2d 553, 555. Therefore, the Court of Appeal reversed the trial court's ruling and held that the "trial court's grant of Appellee's request for destruction of his felony arrest records was a misapplication of the law." Id.
Regarding the constitutionality of the statute, the Court of Appeal determined that there was no evidence in the record that the Attorney General had ever been served, as required by law when the constitutionality of a statute is at issue. Id. As a result, the Court of Appeal determined that the issue of constitutionality was not properly before the court, and thus the case was remanded to the trial court for further proceedings. The Attorney General was subsequently served, and on February 10, 2003, a hearing was held in the trial court on the constitutional issue.
On April 3, 2003, the trial judge signed a final judgment declaring LSA-R.S. 44:9(B)(1) unconstitutional because the State failed to prove a legitimate governmental interest was served by the statute and because the Statute violated the Separations of Powers Doctrine. The trial court's judgment was appealed to this *107 court by the Attorney General's office, the Rapides Sheriff's Office, and the Rapides District Attorney's Office. Our appellate review is governed by LSA-Const. Art. V, Section 5(D) which provides that "a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional ..."

LAW and DISCUSSION
The determination of a statute's constitutionality is a purely judicial function, which is constitutionally vested in the courts. LSA-Const. Art. 5, Sec. 1. Constitutional scrutiny favors the statute. State v. Griffin, 495 So.2d 1306, 1308 (La.1986). Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Hart, 96-0599 (La.1/14/97), 687 So.2d 94. In adjudicating a constitutional challenge, the court must analyze and interpret the language of the constitutional provision specified by the challenger. Louisiana Municipal Association v. State of Louisiana, 00-0374 (La.10/6/00), 773 So.2d 663, 667. Constitutional provisions are to be construed and interpreted by the same rules as are other laws. Louisiana Dep't. of Agriculture and Forestry v. Sumrall, 98-1587 (La.3/2/99), 728 So.2d 1254.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. Art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. Art. 12.
Under the general rules of statutory construction, courts begin their review with the premise that legislation is the solemn expression of legislative will, and, therefore, the interpretation of the law primarily involves the search for the legislature's intent. Cole-Miers Post 3619 V.F.W. of De Ridder v. State, Department of Revenue & Taxation, Office of Alcoholic Beverage Control, 1999-2215 (La.1/19/00), 765 So.2d 312. However, legislative intent is not the appropriate starting point for statutory interpretation. Rather, the appropriate starting point is the language of the statute itself. In re Louisiana Health Service and Indem. Co., XXXX-XXXX (La.10/19/99), 749 So.2d 610, 615.
In the present case, LSA-R.S. 44:9(B)(1) provides:
B. (1) Any person who has been arrested for the violation of a felony offense or who has been arrested for a violation of R.S. 14:34.2, R.S. 14:34.3, or R.S. 14:37 may make a written motion to the district court for the parish in which he was arrested for the expungement of the arrest record if:
(a) The district attorney declines to prosecute, or the prosecution has been instituted, and such proceedings have been finally disposed of by acquittal, dismissal, or sustaining a motion to quash; and
(b) The record of arrest and prosecution for the offense is without substantial probative value as a prior act for any subsequent prosecution. (Emphasis added)
However, only expungement, not destruction, of a felony arrest record is allowed. LSA-R.S. 44:9(B)(2) provides, in pertinent part:
(2) If, after a contradictory hearing with the district attorney and the arresting law enforcement agency, the court finds that the mover is entitled to the relief sought for the above reasons, it shall order all law enforcement agencies to expunge the record of the same in accordance herewith. (Emphasis added).
*108 The inability to have their arrest record destroyed distinguishes this class of persons from individuals arrested for violations of misdemeanor offenses.
LSA-R.S. 44:9(A)(1) grants a person arrested for the violation of a misdemeanor offense the ability to make a written motion to the district, parish, or city court in which the violation was prosecuted or to the district court located in the parish in which he was arrested, for the expungement of the arrest record if "(a) The time limitation for the institution of prosecution of the offense has expired, and no prosecution has been instituted; or (b) If prosecution has been instituted, and such proceedings have been finally disposed of by dismissal, sustaining of a motion to quash, or acquittal." Although LSA-R.S. 44:9(A)(1) instructs persons arrested for misdemeanor violations to make a written motion "for the expungement of the arrest record," LSA-R.S. 44:9(A)(2) requires the court, if it determines that the mover is entitled to the relief sought, to "order all agencies and law enforcement offices having any record of the arrest" to "destroy any record of arrest, photograph, fingerprint, or any other information of any and all kinds or descriptions." (Emphasis added)
LSA-R.S. 44:9 was enacted in 1970 and has since been amended more than a dozen times.[1] The convoluted nature of the statute has previously been noted by this court. Referring to LSA-R.S. 44:9, and related statutes, this court noted in State v. Savoie, 92-1586, 93-1955 (La.5/23/94), 637 So.2d 408, that "(o)ur observation that the clarity of these laws, as amended, leaves much to be desired is an understatement." Savoie at 409. However, the statute, as presently written, is clear and unambiguous in that it provides for the expungement and destruction of a misdemeanor arrest record, but prohibits destruction of a felony arrest record.
Expungement and destruction are different. LSA-R.S. 44:9(G) defines expungement in the following manner:
"Expungement" means removal of a record from public access but does not mean destruction of the record. An expunged record is confidential, but remains available for use by law enforcement agencies, criminal justice agencies, the Louisiana State Board of Medical Examiners, the Louisiana State Board of Nursing, the Louisiana State Board of Dentistry or the Louisiana State Board of Examiners of Psychologists.
In Savoie, supra, this court concluded that, "the word `expungement' is distinct from the word `destruction' and that the two words cannot be used interchangeably or to mean the same thing. Public records which may be `expunged' need not be `destroyed.'" Id. at 410. Appellee argues that the inability to have his record destroyed creates a burden on the class of individuals arrested for felony violations. The record of their arrest and prosecution continues to exist, while the record of the misdemeanor arrest is destroyed. The question for the court is whether or not that burden is constitutional.

Constitutional Framework
The doctrine of equal protection is embodied in our state and federal constitutions. Article I, Section 3 of the Louisiana Constitution[2] and the Fourteenth Amendment *109 to the United States Constitution[3] provide that no person shall be denied the equal protection of the laws. Thus, the judiciary's role is to analyze a law to determine whether it abridges an individual's right to equality, and to determine its constitutionality.
The federal courts have used a three-tier system in order to determine whether a statute violates the equal protection clause. Racial classifications are constitutionally suspect, and subject to the most rigid scrutiny, because the core of the Fourteenth Amendment is the prevention of unjustified official distinctions based on race. Thus, racial classifications bear a far heavier burden of justification than other classifications. Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969).
Similarly, classifications that infringe upon substantive due process rights, such as the right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and the right to vote, Harper v. Virginia Bd. Of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), and 1st Amendment rights, such as the right to free speech, Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), and the right to associate, NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), are also strictly scrutinized and thus held unconstitutional absent a compelling governmental justification.
The middle-tier level of analysis, commonly referred to as intermediate scrutiny, is applied by the courts in cases involving important, but not fundamental interests, such as cases involving gender, Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), alienage, Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), illegitimacy, Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), and wealth, Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941). When applying equal protection intermediate scrutiny analysis, the Court will uphold government conduct if it is substantially related to an important governmental interest.
Lastly, the lowest level of equal protection analysis is referred to as minimal scrutiny. Where legislation does not burden a suspect class or a constitutionally protected right, then the legislative act faces minimal scrutiny. This scrutiny is commonly referred to as the rational basis test. For example, the rational basis test is applicable in cases that involve economic legislation, City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), and social legislation, City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).
In Sibley v. Bd. Of Sup'rs of Louisiana State U., 477 So.2d 1094, (La.1985) this court joined a growing number of state *110 courts [4] and criticized the three-tier level of equal protection analysis employed by the federal courts. In a thorough analysis and critique of the three-tier federal system, this court concluded that "(t)he federal three level system is in disarray and has failed to provide a theoretically sound framework for constitutional adjudication." Id. at 1107. Instead, Louisiana instituted a workable alternative whereby "(t)he constitutionality of governmental action would not depend upon the level of scrutiny applied in a particular case," but "would naturally focus upon governmental and individual interests, resulting in a more precise and reliable evaluation of constitutional questions." Id.
Louisiana's equal protection analysis articulated by the court in Sibley, supra, commands the court to decline enforcement of a legislative classification of individuals in three different situations:
(1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely;
(2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; and
(3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. Id. at 1107.
Under the first situation, statutory classifications based on race or religious beliefs are absolutely forbidden classifications. In Louisiana Associated General Contractors, Inc. v. State of Louisiana, through the Division of Administration, Office of State Purchasing, 95-2105 (La.3/8/96), 669 So.2d 1185, this court held that the minority-set aside provisions of the Louisiana Minority and Women's Business Enterprise Act violated the equal protection clause of the Louisiana Constitution. Id. In so doing, this court concluded that LSA-Const. Art. I, Sect. 3 absolutely prohibits any state law which discriminates on the basis of race. Id. at 1196.
Under the second situation, a statute is unconstitutional unless the proponents of the statute prove that the classification substantially furthers an appropriate state purpose. In Manuel v. State of Louisiana, 95-2189 (La.1996), 692 So.2d 320, 338 this court applied this level of equal protection analysis in a case involving the constitutional challenge of a statute that raised the minimum drinking age from eighteen to twenty-one. Id. at 340. This court made the following determination,
(T)he standard of scrutiny appropriate for review of a statute that classifies persons on the basis of age is whether the classification substantially furthers an appropriate governmental purpose. There is general agreement that improving highway safety is an appropriate governmental purpose, and an important one. The narrow issue is thus whether the age classification in these statutes substantially furthers that purpose.
The court held that the law raising the minimum drinking age did substantially further the appropriate government interest of improving highway safety. Id. at 338.
*111 Under the third situation, where the challenged classification is based on grounds other than discrimination because of birth, race, age, sex, social origin, physical condition, or political or religious ideas, the burden shifts to the challenger of the statute who must show that the statute fails to serve a legitimate government purpose.
In Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury, 96-0543 (La.11/25/96), 684 So.2d 359, the court employed this criteria to scrutinize an ordinance that required an owner or operator of an ambulance to obtain an operating permit. The court held that when an ordinance or statute does not affect fundamental rights, but is merely an economic or social regulation, it need only have a rational relationship to a legitimate governmental interest. Id. at 365.
In the case sub judice, the statutory classification distinguishes between persons who have been arrested for the violation of a felony offense and persons who have been arrested for the violation of a misdemeanor offense. The classification is determined by an individual's arrest status, either misdemeanor or felony.
Since the challenged classification is predicated on grounds other than birth, race, age, sex, social origin, physical condition, or political or religious ideas, the minimal standard of scrutiny is the appropriate level of equal protection analysis. Therefore, under Louisiana's equal protection analysis, as set out in Sibley, supra, appellee "has the stringent burden of demonstrating that the classification does not suitably further any appropriate governmental interest." Id. For the reasons that follow, we conclude that the trial court erred in assigning the burden of proof, and that appellee has failed to meet his burden of proof.
Under the minimal level of equal protection analysis, great deference is given to legislative determinations, and a classification is constitutional if it has a rational relationship to a valid state interest. Louisiana Seafood Management Council v. Louisiana Wildlife and Fisheries Com'n, 97-1367 (La.5/19/98), 715 So.2d 387. Protecting the public health, safety and welfare of citizens is a valid state interest within the meaning of the rational relationship test for determining whether a statute violates equal protection principles. Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury, supra.
Appellee argues that he has been denied equal protection of state and federal laws, and has been singled out for disfavored legal status and general hardship. Appellee cites Utz v. Cullinane, 520 F.2d 467 (1975), for the proposition that there is no rational reason to retain a "collection of dismissed, abandoned or withdrawn arrest records so that later those records may be bootstrapped for some unearned and undeserved significance."
Also, appellee urges that he has been injured in his reputation, and he has suffered loss of a significant liberty interest. He asserts that this law inflicts on him and other persons similarly situated "immediate, continuing, and real injuries that outrun and belie any legitimate justifications that may be claimed by the State." Romer v. Evans, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).
The purpose of a statute may be either the elimination of a public mischief or the achievement of a public good.[5] This court *112 concludes that retention of felony arrest records serves a valid state purpose. In State v. Nettles, 375 So.2d 1339 (La.1979), this court concluded that "(a)rrest records are useful in uncovering criminal conduct, aid in setting bond, and facilitate the work of correctional institutions." Id. at 1342. This point was underscored at trial, where the State offered the testimony of a felony investigator who testified to the usefulness of the closed files in the investigation and enforcement of criminal laws.
In State v. Bradley, 360 So.2d 858 (La.1978), we held that a portion of LSA-R.S. 44:9(A)(2) was unconstitutional because it denied the benefits of expungement to persons arrested but not convicted of the misdemeanor offense of driving while intoxicated, but allowed expungement for persons arrested but not convicted of other misdemeanor offenses. This court concluded that there was no rational basis for distinguishing between these different types of misdemeanor offenses. Id. at 862. The Bradley holding, cited by appellee, is inapplicable to the case at hand because it involved misdemeanor offenses, exclusively. The present case involves the distinction between a felony offense and a misdemeanor offense. Thus, we reject appellee's arguments and instead embrace the concurrence written by Justice Kimball in State v. Savoie, supra, where Justice Kimball emphasized that

expungement of criminal records under La.R.S. 44:9(C), as opposed to destruction of such records under La.R.S. 44:9(B) and (E), removes such records only from public records. In my view, expungement does not affect the collection and processing of criminal history record information by the Louisiana Department of Public Safety or the Louisiana Bureau of Criminal Identification and Information ... nor does it affect the non-public dissemination of criminal history record information to any court, criminal justice agency, or law enforcement agency involved in the detection, investigation, apprehension, prosecution, sentencing, confinement, release, or rehabilitation of criminal offenders. This interpretation of La.R.S. 44:9 is supported by Subsection F of that statute, which provides:
F. For investigative purposes only, the Department of Public Safety may maintain a confidential, nonpublic record of the arrest and disposition. The information contained in this record may be released, upon specific request, therefor and on a confidential basis, to any law enforcement agency. The receiving law enforcement agency shall maintain the confidentiality of such record.
We concede that expunged, but undestroyed, arrest records can impact a citizen in significant areas, i.e. credit applications, licenses, job opportunities, perhaps admission to a college or university and eligibility for educational loans or grants. However, under the minimal standard of equal protection scrutiny, disfavored or unequal treatment alone is insufficient to prove a statute is unconstitutional where the State, under its police powers, has a legitimate interest being served by the classification.

CONCLUSION
In conclusion, we hold that appellee, the party challenging the constitutionality of the statute, has failed to meet his stringent burden of proving that LSA-R.S. 44:9(B)(1) does not meet a valid state purpose, under the minimal scrutiny standard of Louisiana's equal protection analysis. We conclude that retaining felony arrest records does serve a legitimate government interest, as does the statutory classification. Therefore, we find LSA-R.S. 44:9(B)(1) to be constitutional. The trial court's ruling is hereby REVERSED.

*113 ON REHEARING
PER CURIAM.
Rehearing is granted for the sole purpose of clarifying one statement contained in this court's original opinion. In our original opinion, we stated the following:
We concede that expunged, but undestroyed, arrest records can impact a citizen in significant areas, i.e. credit applications, licenses, job opportunities, perhaps admission to a college or university and eligibility for educational loans or grants.
881 So.2d at 112. In its application for rehearing, the State contends this statement is at odds with the provisions of the Public Records Act and La. R.S. 44:9(I). While the above statement is dicta, we recognize that it may be impacted by the application of La. R.S. 44:9(I), which provides:
I. Except to those agencies listed in Subsection G of this Section, no person whose record of arrest and conviction has been expunged pursuant to the provisions of this Section shall be required to disclose that he was arrested or convicted for the subject offense or that the record of the arrest and conviction has been expunged, unless otherwise provided in this Section.
Accordingly, we issue this clarification to recognize the potential applicability of La. R.S. 44:9(I) to some of the instances mentioned in the sentence at issue in our original opinion.
In all other respects, rehearing is denied.
JOHNSON, J., would deny rehearing application of Rapides Parish District Attorney James C. Downs and Rapides Parish Sheriff William Earl Hilton and assigns reasons.
Because La.R.S. 44:9(G) is so general, it is unclear how wide access to expunged records truly is. La.R.S. 44:9(G) provides,
An expunged record is confidential, but remains available for use by law enforcement agencies, criminal justice agencies, the Louisiana Board of Medical Examiners, the Louisiana State Board of Nursing, the Louisiana State Board of Dentistry or the Louisiana State Board of Examiners of Psychologists.
The medical agencies are specific, but "law enforcement agencies" and "criminal justice agencies" could be broadly construed.
Additionally, the scope of disclosure required by the statute is an issue. La.R.S. 44:9(I) provides,
Except to those agencies listed in Subsection G of this Section, no person whose record of arrest and conviction has been expunged pursuant to the provisions of this Section shall be required to disclose that he was arrested or convicted for the subject offense or that the record of the arrest and conviction has been expunged, unless otherwise provided in this Section.
However, we know from our own experience that there are agencies other than those listed in La.R.S. 44:9(G) that require disclosure of arrests and convictions despite expungement. For instance, the Louisiana Committee on Bar Admissions requires full disclosure of expungement. Question # 22 on the Character and Fitness Information application states the following:
22. Have you ever been cited, arrested, charged, or convicted for any violation of any law other than as a juvenile? (Omit traffic violations.)
NOTE: This should include matters that have been expunged or been subject to a diversion program.
The applicant who fails to make full disclosure of an expunged record is *114 deemed lacking in the required moral character, and can be denied admission to the practice of law in Louisiana.
Without doing an exhaustive search of all employers, educational institutions, lenders, etc., I remain of the opinion that an individual once accused of a criminal offense, can be negatively impacted over the course of his lifetime.
NOTES
[1] See LSA-R.S. 44:9 Historical and Statutory Notes.
[2] LSA  Const. Art. 1, Sect. 3. provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the later case as punishment for crime.
[3] U.S.C.A. amend. XIV provides, in pertinent part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[4] Jeffrey M. Shaman, The Evolution of Equality in State Constitutional Law, 34 RULJ 1013 (2003).
[5] Joseph Tussman and Jacobus ten Broek, The Equal Protection of the Laws, 37 California Law Review 341, 346 (1949).