982 So.2d 779 (2008)
STATE of Louisiana
v.
Alexander GRANGER.
No. 2007-KA-2285.
Supreme Court of Louisiana.
May 21, 2008.
*782 James D. Caldwell, Attorney General, Mary Ellen Hunley, Assistant Attorney General, Douglas P. Moreau, District Attorney, for appellant.
Delatte, Edwards & Marcantel, Glynn Joseph Delatte, Jr., Baton Rouge, for appellee.
KIMBALL, Justice.
This is a direct appeal from a judgment of the district court that declared La. R.S. 15:578.1 unconstitutional. La. R.S. 15:578.1 provides that any person arrested for driving while intoxicated ("D.W.I.") in violation of La. R.S. 14:98 and placed into a pretrial diversion program shall have his or her arrest record and placement into the pretrial diversion program made a public record after exiting that program. The statute additionally provides that this public record shall be maintained for five years from the date of arrest before becoming subject to expungement or destruction. The issue presented to this court is whether La. R.S. 15:578.1 unconstitutionally discriminates against these D.W.I. offenders, and thus violates the equal protection guarantees of Article I, Section 3 of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution. For the reasons that follow, we conclude that La. R.S. 15:578.1 is not unconstitutional because it suitably furthers an appropriate state interest, and defendant has failed to satisfy his burden of proving otherwise. The judgment below is therefore reversed.

FACTS AND PROCEDURAL HISTORY
On October 29, 2005, defendant Alexander Granger, was arrested for driving while intoxicated in the Parish of East Baton Rouge. On January 6, 2006, the District Attorney charged defendant, by bill of information, with operating a vehicle while intoxicated, first offense, in violation of La. R.S. 14:98(B),[1] and failure to *783 drive only upon the right half of the roadway, in violation of La. R.S. 32:71(A).[2] On April 3, 2006, defendant entered into a pretrial diversion program, which he successfully completed on June 13, 2006. Defendant then filed a "Motion to Expunge Criminal Records under Provisions of [La. R.S.] 44:9" ("Motion to Expunge") on August 1, 2006, asserting that, since the time for prosecution had run, he was entitled to have that record destroyed pursuant to La. R.S. 44:9(A).[3] On December 12, 2006, the State of Louisiana filed a "Statement in Opposition to Motion for Expungement" ("Statement in Opposition"), in which it argued that defendant's D.W.I. arrest, in violation of La. R.S. 14:98(B), was presently ineligible for expungement under the provisions of La. R.S. 15:578.1.[4] The district court dismissed defendant's Motion to Expunge on January 18, 2007.
On February 21, 2007, defendant filed a "Motion to Reconsider Ruling" ("Motion to Reconsider") in the district court, contending that La. R.S. 15:578.1 is *784 unconstitutional.[5] In support of his Motion to Reconsider, defendant asserted that La. R.S. 15:578.1 violates equal protection principles by denying, for five years, misdemeanor D.W.I. pretrial diversion participants the opportunity to have their arrest records expunged, while all other misdemeanor pretrial diversion participants can have their records expunged pursuant to La. R.S. 44:9 once the time to prosecute their offenses has run. Citing State v. Bradley, 360 So.2d 858 (La.1978), defendant argued that "affording different treatment to [defendant] because he was arrested for D.W.I., as opposed to some other misdemeanor charge, is not rationally related to a legitimate state interest and, therefore, is a violation of equal protection guaranteed [sic] by the [Fourteenth] Amendment [to the United States Constitution] and [Article I], Section 3 of the Louisiana Constitution of 1974." R. at 45.
In response, the State filed a "Memorandum in Opposition to Reconsidering the Ruling of the Trial Court" ("Memorandum in Opposition"), in which it asserted that defendant voluntarily entered into a pretrial diversion program to avoid the harsher penalties that would be imposed if he were convicted for violating La. R.S. 14:98(B). Citing La. R.S. 44:9, the State argued that pretrial diversion was, as a method of disposition for defendant's D.W.I. violation, wholly different than "dismissal, sustaining of a motion to quash, or acquittal[.]" See La. R.S. 44:9(A)(1)(b). Thus, the State contended that La. R.S. 44:9 simply should not apply to defendant's situation. The State sought to distinguish State v. Bradley on these grounds, noting that Bradley had held unconstitutional a portion of La. R.S. 44:9 within which all first and second D.W.I. misdemeanor arrests were treated differently than all other misdemeanor arrests for expungement purposes, while La. R.S. 15:578.1 applied only to misdemeanor D.W.I. defendants that chose to enter into a pretrial diversion program to avoid the risks associated with continued prosecution. Further, the State asserted that, even through an equal protection analysis of La. R.S. 15:578.1 itself, defendant could not show that the statute fails to serve a legitimate government purpose. To the contrary, the State argued that the importance of protecting the public from the dangers of drunk driving had become much more clear since the Bradley decision was issued and that the State had several valid interests in not allowing the expungement of arrest records for individuals who participate in pretrial diversion programs.
On August 27, 2007, the district court held a hearing on defendant's Motion to Reconsider. At this hearing, defendant argued that the completion of a pretrial diversion program "equals a dismissal just like required [sic] under [La. R.S.] 44:9 in *785 order to expunge any record." R. at 68. Defendant argued further that the State had been unable to show any specific interest furthered by keeping misdemeanor D.W.I. offenders' arrest records public for five years under La. R.S. 15:578.1. Accordingly, defendant again cited State v. Bradley, 360 So.2d 858 (La.1978), and asserted that, by denying only misdemeanor D.W.I. offenders the right to have their misdemeanor arrest records expunged under La. R.S. 44:9, La. R.S. 15:578.1 violates the equal protection principles espoused in the Constitutions of the United States and the State of Louisiana.
In response, the State argued that the five-year public record requirement within La. R.S. 15:578.1 does, in fact, suitably further a legitimate state interest. Specifically, the State asserted that, because La. R.S. 15:578.1 deters pretrial diversion participants from re-offending and allows Louisiana's prosecuting authorities to more efficiently deny previous offenders any offers to participate in pretrial diversion programs by consulting those public records, the statute protects the public from drunk drivers. Nevertheless, the district court remained troubled by the fact that a misdemeanor D.W.I. pretrial diversion participant's arrest record becomes public for five years under La. R.S. 15:578.1, while certain similar misdemeanor D.W.I. offenders who were actually adjudicated guilty can seek record expungement under La.C.Cr.P. art. 894[6] after a *786 period of probation (usually two years). Unpersuaded by the State's justifications, the district court thus found "no compelling governmental interest in treating those people who have gone through a diversionary program any different [sic] from the other class of D.W.I. arrestees or offenders," and declared La. R.S. 15:578.1 unconstitutional. R. at 82-83.
Pursuant to La. Const. art. V, § 5(D),[7] the instant appeal followed.

LAW AND DISCUSSION
The issue presented in this appeal is whether La. R.S. 15:578.1 unconstitutionally discriminates against D.W.I. offenders who enter into pretrial diversion programs, and thus violates the equal protection guarantees of Article I, Section 3 of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution. To resolve this issue, we begin below with a brief discussion of the applicable burden of proof, followed by an analysis of the equal protection standards set forth in the constitutions of the United States and the State of Louisiana. Thereafter, we turn our discussion to the constitutionality of La. R.S. 15:578.1 in particular. Specifically, we will address the classification that the statute creates, the level of equal protection scrutiny applied to that classification, and finally, whether that classification suitably furthers an appropriate state interest.
Burden of Proof
Statutes are presumed to be constitutional and their constitutionality will be preserved "when it is reasonable to do so." State v. Fleury, 01-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472; see also Moore v. Roemer, 567 So.2d 75, 78 (La. 1990); State v. Griffin, 495 So.2d 1306, 1308 (La.1986). Since statutes are presumed to be constitutional, "the party challenging the validity of a statute generally has the burden of proving unconstitutionality." Moore v. RLCC Techs., Inc., 95-2621, pp. 7-8 (La.2/28/96), 668 So.2d 1135, 1140; see also Roemer, 567 So.2d at 79. To satisfy this burden, the challenging party must cite the specific constitutional provision that prohibits the legislative action.[8]Fleury, 01-0871, p. 5, 799 So.2d at *787 472; see also Soloco, Inc. v. Dupree, 97-1256, p. 3 (La.1/21/98), 707 So.2d 12, 14; RLCC, 95-2621, p. 8, 668 So.2d at 1140. In the case sub judice, defendant challenges the constitutionality of La. R.S. 15:578.1 by arguing that it violates the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the Louisiana Constitution.
Equal Protection
Our federal equal protection standard is rooted in the Fourteenth Amendment to the United States Constitution, which provides, in pertinent part:
Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
In State v. Expunged Record (No.) 249,044, this court recently discussed the three-tier classification system that federal courts have used to determine whether a statute violates the equal protection clause of the Fourteenth Amendment:
Racial classifications are constitutionally suspect, and subject to the most rigid scrutiny, because the core of the Fourteenth Amendment is the prevention of unjustified official distinctions based on race. Thus, racial classifications bear a far heavier burden of justification than other classifications.
Similarly, classifications that infringe upon substantive due process rights, such as the right to interstate travel and the right to vote, and [First] Amendment rights, such as the right to free speech and the right to associate, are also strictly scrutinized and thus held unconstitutional absent a compelling governmental justification.
The middle-tier level of analysis, commonly referred to as intermediate scrutiny, is applied by the courts in cases involving important, but not fundamental interests, such as cases involving gender, alienage, illegitimacy, and wealth. When applying equal protection intermediate scrutiny analysis, the Court will uphold government conduct if it is substantially related to an important governmental interest.
Lastly, the lowest level of equal protection analysis is referred to as minimal scrutiny. Where legislation does not burden a suspect class or a constitutionally protected right, then the legislative act faces minimal scrutiny. This scrutiny is commonly referred to as the rational basis test. For example, the rational basis test is applicable in cases that involve economic legislation and social legislation.
03-1940, pp. 7-8 (La.7/2/04), 881 So.2d 104, 109 (citations omitted).
While this federal standard of equal protection analysis provides a minimal level of protection, states can afford greater protection than it requires. Louisiana Associated Gen. Contractors, Inc. v. State of Louisiana, through the Div. of Admin., Office of State Purchasing, 95-2205, p. 14 (La.3/8/96), 669 So.2d 1185, 1196. Louisiana has done just that. When the Louisiana Constitution of 1974 was drafted, its doctrine of equal protection *788 was written to go "beyond the decisional law construing the Fourteenth Amendment."[9]Sibley v. Bd. of Sup'rs of Louisiana State Univ., 477 So.2d 1094, 1108 (La.1985); Louisiana Associated Gen. Contractors, 95-2205, p. 14, 669 So.2d at 1196.
Louisiana's own equal protection standard is based upon the guarantee that state laws generally "affect alike all persons and interests similarly situated." State v. Petrovich, 396 So.2d 1318, 1322 (La.1981). Nevertheless, Louisiana's legislature is allowed great latitude to create classifications under its laws, "so long as those classifications can withstand constitutional muster." State v. Fleury, 01-0871, p. 6 (La.10/16/01), 799 So.2d 468, 472; see also Petrovich, 396 So.2d at 1322; Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1388 (La.1978). To withstand constitutional muster, a legislative classification must comply with Louisiana's Declaration of the Right to Individual Dignity found within the 1974 Louisiana Constitution, see Sibley v. Bd. of Sup'rs of Louisiana State Univ., 477 So.2d 1094, 1107-08 (La.1985), which provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
La. Const. art. I, § 3.
In Sibley v. Board of Supervisors of Louisiana State University, this court reviewed the impact of this Declaration and determined that Louisiana, through the adoption of Article I, Section 3 and its corresponding guarantees, "moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment." 477 So.2d 1094, 1108 (La.1985). Accordingly, the Sibley court determined that "the federal multi-level system is not an appropriate model for interpreting and applying the protection of equal laws pledged by our state constitution[,]" id. at 1104, and set forth a similar, yet decidedly different, approach to its equal protection analysis:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, *789 culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.[10]
Id. at 1107-08 (footnotes omitted).
Under these stricter levels of scrutiny, laws creating the type of classification listed in the first situation always fail. See Fleury, 01-0871, p. 6, 799 So.2d at 472; Louisiana Associated Gen. Contractors, Inc. v. State of Louisiana, through the Div. of Admin., Office of State Purchasing, 95-2205, p. 16 (La.3/8/96), 669 So.2d 1185, 1197. Laws creating classifications in the second situation are prima facie proof that equal protection has been denied, and a law's proponent bears the burden of proving that its classification "substantially furthers an important government interest." Fleury, 01-0871, p. 7, 799 So.2d at 472-73. Laws that create classifications in the third situation, however, are "presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest." Fleury, 01-0871, p. 7, 799 So.2d at 472; see also Moore v. RLCC Techs., Inc., 95-2621, p. 10 (La.2/28/96), 668 So.2d 1135, 1141 (holding that "[w]henever a person disadvantaged by a legislative classification not enumerated in [Article I,] Section 3 [of the Louisiana Constitution] seeks to have the classification declared unconstitutional, that person has the stringent burden of demonstrating that the classification does not suitably further any appropriate governmental interest") (emphasis added); State v. Expunged Record (No.) 249,044, 03-1940, p. 10 (La.7/2/04), 881 So.2d 104, 110.
This opinion will now focus upon this stricter, Article I, Section 3 equal protection analysis ("Sibley analysis") to analyze the constitutionality of La. R.S. 15:578.1. Afterward, the opinion will briefly discuss the statute's constitutionality under federal Fourteenth Amendment jurisprudence.
Constitutionality of La. R.S. 15:578.1
Having addressed the levels of equal protection scrutiny employed by this court when addressing legislative classifications, we now begin our constitutionality analysis with the language of the statute itself, as Louisiana recognizes that legislation is deemed a solemn expression of legislative will. La. C.C. art. 2. La. R.S. 15:578.1 provides:
Pursuant to the provisions of R.S. 15:242,[11] the prosecuting authority shall maintain a list of all persons arrested for a violation of R.S. 14:98, operating a vehicle while intoxicated, or a parish or municipal ordinance that prohibits operating a vehicle while intoxicated, while impaired, or while under the influence of alcohol, drugs, or any controlled dangerous substance, and placed by the prosecuting authority into a pretrial diversion *790 program. The arrest record and placement into the pretrial diversion or intervention program shall become a public record when the person successfully completes the pretrial diversion or intervention program or is terminated from the program. Such record shall be maintained for a period of five years from the date of arrest and shall not be subjected to expungement or destruction during the period.

(Emphasis added).
The plain language of the statute specifically addresses those D.W.I. offenders who participate in a pretrial diversion program, and states that their arrest record and the placement into pretrial diversion program shall remain public for five years. In contrast, pretrial diversion participants arrested for other offenses are not subject to the terms of La. R.S. 15:578.1, and other D.W.I. arrestees that do not participate in pretrial diversion programs are subject to different public record and expungement rules. It is this distinction made by La. R.S. 15:578.1 which creates a classification on the face of the statute. In other words, the statute classifies on its face those D.W.I. offenders who participate in a pretrial diversion program by requiring that their arrest record and placement in the pretrial diversion program remain public for five years.
This court has stated that because the equal protection guarantees provided by our Constitution do not take from the state all power of classification, when faced with a legislative classification, a Sibley analysis is appropriate to determine the statute's constitutionality. State v. Baxley, 94-2982, p. 7 (La.5/22/95), 656 So.2d 973, 978. Thus, as La. R.S. 15:578.1 specifies those D.W.I. offenders who participate in pretrial diversion, and, as a result, delineates a facial classification in that regard, a Sibley equal protection analysis is therefore appropriate for determining the constitutionality of La. R.S. 15:578.1.
Based upon the aforementioned statutory classification, we must now determine what level of equal protection scrutiny to apply to that classification. Since the group classification set forth in La. R.S. 15:578.1 does not fall within one of the enumerated classes listed in La. Const. art. I, § 3 (that is, its classification of pretrial diversion program participants arrested for D.W.I. is not based upon "race or religious ideas," nor upon the basis of "birth, age, sex, culture, physical condition, or political ideas or affiliations"), the third, minimal standard of equal protection scrutiny applies. Sibley v. Bd. of Sup'rs of Louisiana State Univ., 477 So.2d 1094, 1107 (La.1985). Defendant thus bears the burden of proving that La. R.S. 15:578.1 "does not suitably further an appropriate state interest." Id.
To determine whether defendant can satisfy his burden of proving that the classification presented within La. R.S. 15:578.1 does not suitably further an appropriate state interest, we start with the State's asserted interest: protecting Louisiana's citizens and visitors from the dangers of intoxicated drivers. We find that this is, at the very least, an "appropriate state interest." Indeed, attitudes toward highway safety, generally, and impaired driving, specifically, have hardened significantly through the previous decades.[12] *791 This court has recognized that "[t]here is general agreement that improving highway safety is an appropriate governmental purpose, and an important one." Manuel v. State of Louisiana, 95-2189, p. 6, (La.7/2/96), 692 So.2d 320, 340 (on reh'g). More particularly, upon this nation's roads and highways, "[n]o one can seriously dispute the magnitude of the [impaired] driving problem or the States' interest in eradicating it." Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); see also State v. Rolen, 95-0347, p. 6 (La.9/15/95), 662 So.2d 446 (per curiam) (finding that the societal costs of impaired driving have been well documented); State v. Beavers, 382 So.2d 943, 944 (La.1980) (upholding the constitutionality of harsher penalties for repeat D.W.I. offenses due to the magnitude of the risk of harm that impaired driving presents).
Moreover, the State has asserted that La. R.S. 15:578.1 suitably furthers this important state interest because it helps to protect the public from intoxicated drivers in two particular ways. First, the State argues that the five-year public record requirement allows Louisiana's prosecuting authorities to more efficiently deny previous offenders any offers to participate in pretrial diversion programs by consulting those public records. Next, the State argues that the five-year public record provision deters D.W.I. arrestee pretrial diversion participants from re-offending. In challenging the subject statute's constitutionality, defendant must establish that the State's asserted interest in public safety is not suitably furthered for these reasons. See Sibley v. Bd. of Sup'rs of Louisiana State Univ., 477 So.2d 1094, 1107 (La. 1985). If he cannot, La. R.S. 15:578.1 must be upheld as constitutional. See id.
Defendant has offered two particular arguments to challenge the legislature's classification under La. R.S. 15:578.1. First, defendant argues that La. R.S. 15:578.1 unconstitutionally discriminates by targeting only D.W.I. offenders who participate in pretrial diversion programs, while sparing all other pretrial diversion program participants from its provisions. Defendant asserts that such treatment directly conflicts with State v. Bradley, which held that the State had "failed to demonstrate any rational basis for the different treatment afforded D.W.I. misdemeanor arrests[ ]" under La. R.S. 44:9(A)(2).[13] 360 So.2d 858, 862 (La.1978).
We do not agree, however, that Bradley is controlling in this matter. We note *792 first that, in Bradley, the defendant had been granted a directed verdict of acquittal after being tried for driving while intoxicated. Id. at 859. The defendant was then denied the opportunity to have his D.W.I. arrest record expunged under the terms of La. R.S. 44:9. Id. When the defendant challenged the constitutionality of this treatment, the State responded with entirely different "rational bases" for preventing the expungement of D.W.I. arrest records:[14] use of the arrest records (1) in "license revocation proceedings conducted by the Department of Public Safety under the provisions of R.S. 32:414[;]" and (2) in "habitual motor vehicle offender proceedings under R.S. 32:1472." Id. at 861-62. In the instant matter, on the other hand, the State now argues that the public record requirement set forth in La. R.S. 15:578.1 is justified because it allows for future pretrial diversion offers to be more efficiently distributed, and because it deters pretrial diversion participant D.W.I. arrestees from re-offending.
Further, defendant argues that La. R.S. 15:578.1 is unconstitutional, and Bradley applies, because the statute does not treat alike persons similarly situated. But the D.W.I. pretrial diversion program participants subjected to the terms of La. R.S. 15:578.1 are not similarly situated to other pretrial diversion program participants. Attitudes toward highway safety and impaired driving have changed drastically since Bradley was decided in 1978 and, as established above, it is now well-recognized that intoxicated drivers present a special type of societal issue.
Thus, D.W.I. offenders[15] pose a particular problem within Louisiana, and subjecting D.W.I. pretrial diversion program participants to different treatment in an effort to deal with this problem is entirely rational: while a pretrial diversion program participant arrested for simple possession of marijuana, for example, certainly broke the law, a pretrial diversion program participant arrested for driving under the influence of drugs or alcohol not only broke the law, but endangered the lives of all those that shared the road with him or her before being arrested. As this court recently noted, "[p]rotecting the public health, safety, and welfare of citizens is a valid state interest . . .," and, "under the minimal standard of equal protection scrutiny, disfavored or unequal treatment alone is insufficient to prove a statute is unconstitutional where the State, under its police powers, has a legitimate interest being served by the classification." State v. Expunged Record (No.) 249,044, 03-1940, pp. 11, 13 (La.7/2/04), 881 So.2d 104 at 111, 12; see also Louisiana Seafood Mgmt. Council v. Louisiana Wildlife & Fisheries Comm., 97-1367, p. 14 (La.5/19/98), 715 So.2d 387, 395 ("Under the rational basis standard, great deference is given to legislative *793 determinations[, and a] classification is constitutional if it has some reasonable basis.") (emphasis added).
Second, defendant argues that, regardless of the legitimacy of the state interest at stake, La. R.S. 15:578.1 does not suitably further that interest. Defendant reiterates that, in holding La. R.S. 15:578.1 unconstitutional, the district court determined that no state interest was being appropriately furthered by requiring that the arrest records of those accused of being D.W.I. offenders who participate in pretrial diversion programs be public for five years before becoming expungeable, while other D.W.I. offenders could seek expungement at an earlier time pursuant to La. R.S. 44:9 and La.C.Cr.P. art. 894.
In addressing this "suitably furthered" argument, we begin by noting that the varied treatments for misdemeanor D.W.I. offenders mentioned by the district court and defendant are not as unequal as each asserts. First, it is true that a trial court can order expunged the arrest and conviction record of a first or second D.W.I. offender after that offender successfully completes a period of probation following his or her conviction under La.C.Cr.P. art. 894(B)(1). See La. R.S. 44:9(E)(3)(a).[16] Once expunged as a public record, a confidential record of a first or second D.W.I. offender's conviction and sentence is maintained by the Department of Corrections for a period of ten years, subject to limited instances of authorized disclosure. La. C.Cr.P. art. 894(D)(2). Nevertheless, a public record of the misdemeanor conviction remains for the entirety of the period of probation (typically two years) before the offender can seek expungement. See La.C.Cr.P. art. 894(B).
Yet while it also true that a D.W.I. pretrial diversion program participant's public record will exist for five years under La. R.S. 15:578.1, once this time period expires, the individual can move to have his or her arrest record both expunged and destroyed altogether under La. R.S. 44:9(A)(2).[17] Therefore, in return for a somewhat longer period of time during which a D.W.I. arrest record remains public, the D.W.I. pretrial diversion program participant is eligible to have any trace of his or her arrest record destroyed at the end of this time period. Accordingly, while we agree that this treatment is different, we do not agree that the treatment is so unequal as to be deemed unconstitutional. As we have stated before, "[t]he equal protection clause does not require absolute equality or precisely equal advantages." Beauclaire v. Greenhouse, 05-0765, p. 5 (La.2/22/06); 922 So.2d 501, 505; *794 see also McCormick v. Hunt, 328 So.2d 140, 142 (La.1976).
Additionally, as explained above, the State has presented two valid explanations of the relationship between the five-year public record requirement within La. R.S. 15:578.1 and the legitimate state objective of protecting the public from intoxicated drivers: that the five-year public record requirement allows Louisiana's prosecuting authorities to more efficiently deny previous offenders any offers to participate in pretrial diversion programs by consulting those public records, and that the five-year public record provision deters D.W.I. arrestee pretrial diversion participants from re-offending. As this court has established, whenever a person disadvantaged by a legislative classification not enumerated in Article I, Section 3 of the Louisiana Constitution seeks to have that classification declared unconstitutional, "that person has the stringent burden of demonstrating that the classification does not suitably further any appropriate governmental interest". Moore v. RLCC Techs., Inc., 95-2621, p. 10 (La.2/28/96), 668 So.2d 1135, 1141 (emphasis added); see also State v. Fleury, 01-0871, p. 7 (La.10/16/01), 799 So.2d 468, 472; State v. Expunged Record (No.) 249,044, 03-1940, p. 10 (La.7/2/04), 881 So.2d 104, 110. Here, defendant has offered no evidence to refute the State's explanations of how La. R.S. 15:578.1 suitably furthers the governmental interest of protecting the public from intoxicated drivers. The governmental interest is undeniably important, and in the face of such social welfare concerns, a legislature does not violate equal protection guarantees "merely because the classifications made by its laws are imperfect." Bazley v. Tortorich, 397 So.2d 475, 484 (La.1981). So long as the classification has "some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." Id. (citing Metropolis Theater Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 57 L.Ed. 730 (1913) ("The problems of government are practical ones and may justify, if they do not require, rough accommodations  illogical, it may be, and unscientific."); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) ("A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.")).[18] At bottom, defendant has failed to satisfy his stringent burden of proving that the classification put forth in La. R.S. 15:578.1 does not suitably further the important governmental interest of protecting the public from intoxicated drivers. La. R.S. 15:578.1 therefore withstands our Sibley equal protection analysis and cannot be deemed unconstitutional under La. Const. art. I, § 3.
Finally, we note here that La. R.S. 15:578.1 is also constitutional under the Fourteenth Amendment to the United States Constitution, pursuant to United States Supreme Court jurisprudence. Under the lowest level, "rational-basis" review that the federal courts apply to legislation in areas of social and economic policy, see Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), a statutory classification "must be upheld against equal protection challenge if there is any reasonably *795 conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Comms., Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211. Once again, in the case sub judice, the State has offered plausible explanations for how La. R.S. 15:578.1 is rationally related to the legitimate state interest of protecting the public from intoxicated drivers. Supreme Court jurisprudence dictates that the statute bears a strong presumption of validity, see Lyng v. Auto. Workers, 485 U.S. 360, 370, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988), and that defendant has the burden "to negative every conceivable basis which might support it." Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). For the same reasons stated above, defendant has failed to satisfy this burden, and La. R.S. 15:578.1 withstands Fourteenth Amendment equal protection scrutiny as well.
Conclusion
The type of classification presented within La. R.S. 15:578.1 is not one of those specifically enumerated within Article I, Section 3 of the Louisiana Constitution. Consequently, the statute's classification is subject to our lowest level of equal protection scrutiny, and La. R.S. 15:578.1 is presumed to be constitutional unless defendant, as the statute's challenger, can prove that the classification does not suitably further an appropriate state interest. We find that the interests set forth by the State in this matter are appropriate and that defendant has not offered any persuasive evidence indicating that La. R.S. 15:578.1 does not suitably further these appropriate interests. Accordingly, the district court's judgment declaring La. R.S. 15:578.1 unconstitutional was erroneous and is therefore reversed. Defendant's Motion for Expungement is hereby dismissed.

DECREE
For the reasons assigned, the judgment of the district court declaring La. R.S. 15:578.1 unconstitutional is reversed.
REVERSED.
NOTES
[1] As applicable to the instant matter, La. R.S. 14:98, "Operating a vehicle while intoxicated[,]" provides the following:

A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood[.]
. . .
B. (1) On a first conviction, notwithstanding any other provision of law to the contrary, the offender shall be fined not less than three hundred dollars nor more than one thousand dollars, and shall be imprisoned for not less than ten days nor more than six months. Imposition or execution of sentence shall not be suspended unless:
(a) The offender is placed on probation with a minimum condition that he serve two days in jail and participate in a court-approved substance abuse program and participate in a court-approved driver improvement program; or
(b) The offender is placed on probation with a minimum condition that he perform four eight-hour days of court-approved community service activities, at least half of which shall consist of participation in a litter abatement or collection program, participate in a court-approved substance abuse program, and participate in a court-approved driver improvement program.
. . .
[2] La. R.S. 32:71(A) states:

Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement, including passing lanes;
(2) When the right half of the roadway is closed to traffic while under construction or repair;
(3) Upon a roadway designated and signposted for one-way traffic.
[3] La. R.S. 44:9(A) allows that:

(1) Any person who has been arrested for the violation of a municipal or parish ordinance or for the violation of a state statute which is classified as a misdemeanor may make a written motion to the district, parish, or city court in which the violation was prosecuted or to the district court located in the parish in which he was arrested, for expungement of the arrest record, under either of the following conditions:
(a) The time limitation for the institution of prosecution on the offense has expired, and no prosecution has been instituted; or
(b) If prosecution has been instituted, and such proceedings have been finally disposed of by dismissal, sustaining of a motion to quash, or acquittal.
[4] La. R.S. 15:578.1, "Pretrial diversion program for driving while intoxicated; criminal history records[,]" provides:

Pursuant to the provisions of R.S. 15:242, the prosecuting authority shall maintain a list of all persons arrested for a violation of R.S. 14:98, operating a vehicle while intoxicated, or a parish or municipal ordinance that prohibits operating a vehicle while intoxicated, while impaired, or while under the influence of alcohol, drugs, or any controlled dangerous substance, and placed by the prosecuting authority into a pretrial diversion program. The arrest record and placement into the pretrial diversion or intervention program shall become a public record when the person successfully completes the pretrial diversion or intervention program or is terminated from the program. Such record shall be maintained for a period of five years from the date of arrest and shall not be subjected to expungement or destruction during the period.
La. R.S. 15:242, "Pretrial diversion for driving while intoxicated; reporting[,]" states:
Notwithstanding any provision of law to the contrary, if a person is placed into a pretrial diversion program following an arrest for a violation of R.S. 14:98, operating a vehicle while intoxicated, or a parish or municipal ordinance that prohibits operating a vehicle while intoxicated, while impaired, or while under the influence of alcohol, drugs, or any controlled dangerous substance, then the prosecuting authority shall maintain a record consisting of the name of the person, the arrest date, and a description of the pretrial intervention or diversion program into which the person was placed. Such records shall become a public record when the person has successfully completed the intervention program or is terminated from the program.
[5] Though there is no single procedure for challenging the constitutionality of a statute, our jurisprudence has established that a statute "must first be questioned in the trial court . . ., and the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized." Vallo v. Gayle Oil Co., 94-1238, p. 8 (La. 11/30/94), 646 So.2d 859, 864-65 (footnote omitted). These rules have been established so that interested parties are afforded sufficient time to prepare briefs defending the constitutionality of a challenged statute, so that trial courts are provided with complete and thoughtful arguments regarding the issue of constitutionality, and so that reviewing courts have an adequate record upon which to determine the statute's constitutionality. Istre v. Meche, 00-1316, p. 4 (La.10/17/00), 770 So.2d 776, 779. Raising the constitutionality issue within a motion has been deemed by this court to satisfy these goals. See Vallo, 94-1238, p. 8, 646 So.2d at 865. Accordingly, defendant's constitutional challenge, presented in his Motion to Reconsider, is now properly before us.
[6] La.C.Cr.P. art. 894, "Suspension and deferral of sentence; probation in misdemeanor cases[,]" provides, in pertinent part:

A. (1) Notwithstanding any other provision of this Article to the contrary, when a defendant has been convicted of a misdemeanor, except criminal neglect of family, or stalking, the court may suspend the imposition or the execution of the whole or any part of the sentence imposed, provided suspension is not prohibited by law, and place the defendant on unsupervised probation or probation supervised by a probation office, agency, or officer designated by the court, other than the division of probation and parole of the Department of Public Safety and Corrections, upon such conditions as the court may fix. Such suspension of sentence and probation shall be for a period of two years or such shorter period as the court may specify.
. . .
(5) At the time that any defendant petitions the court to set aside any plea for operating a vehicle while intoxicated pursuant to this Article, the court shall order the clerk of court to mail to the Department of Public Safety and Corrections, office of motor vehicles, a certified copy of the record of the plea, fingerprints of the defendant, and proof of the requirements as set forth in Code of Criminal Procedure Article 556.1 which shall include the defendant's date of birth, social security number, and driver's license number. An additional fifty dollar court cost shall be assessed at this time against the defendant and paid to the Department of Public Safety and Corrections, office of motor vehicles, for the costs of storage and retrieval of the records.
B. (1) When the imposition of sentence has been deferred by the court, as authorized by this Article, and the court finds at the conclusion of the period of deferral that the defendant has not been convicted of any other offense during the period of the deferred sentence, and that no criminal charge is pending against him, the court may set the conviction aside and dismiss the prosecution. However, prior to setting aside any conviction and dismissing the prosecution for any charge for operating a vehicle while intoxicated, the court shall require proof in the form of a certified letter from the Department of Public Safety and Corrections, office of motor vehicles, that the requirements of Paragraph A(5) of this Article have been complied with.
(2) The dismissal of the prosecution shall have the same effect as an acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender. Discharge and dismissal under this provision may occur only once with respect to any person during a five-year period. However, discharge and dismissal under this provision for the offense of operating a vehicle while intoxicated may occur only once with respect to any person during a ten-year period.
C. Nothing contained herein shall be construed as being a basis for destruction of records of the arrest and prosecution of any person convicted of a misdemeanor.
D. (1) The Department of Public Safety and Corrections, office of motor vehicles, shall serve as a repository for the records referred to in Paragraph A(5) of this Article for any plea for operating a vehicle while intoxicated entered pursuant to the provisions of this Article. The department shall maintain records for a period of ten years. The department shall respond by certified mail to a request by any court, prosecuting agency, or defendant seeking certified copies of the records or verification that the records are in the possession of the department.
(2) The records maintained by the department pursuant to this Article shall be confidential, except as otherwise provided in this Article. Certified copies of the records maintained by the department shall be admissible only in a subsequent prosecution for operating a vehicle while intoxicated and shall not be used for any other purpose.
. . .
[7] La. Const. art. V, § 5(D), "Appellate Jurisdiction[,]" states that, "[i]n addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed."
[8] This is so because "[i]t is a general principle of judicial interpretation that, unlike the federal constitution, a state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature." Bd. of Comm'rs v. Bd. of Comm'rs, 95-1353, p. 3 (La.1/16/96), 666 So.2d 636, 639.
[9] In Louisiana Associated General Contractors, Inc. v. State of Louisiana, through the Division of Administration, Office of State Purchasing, this court undertook a detailed analysis of Louisiana's equal protection doctrine pursuant to La. Const. art. I, § 3. See 95-2205, pp. 13-20 (La.3/8/96), 669 So.2d 1185, 1195-1200. In the course of that analysis, the General Contractors court held that "[b]oth the express language adopted in Art. I, Sec. 3 as well as the proceedings of the 1973 Constitutional Convention support Sibley's holding that Art. I, Sec. 3 was intended to give the citizens of this state greater equal protection rights than are provided under the Fourteenth Amendment." Id., p. 14, at 1196. Indeed, the guarantee of equal protection within La. Const. art. I, § 3 was found to "`differ[ ] markedly' from the federal guarantee of equal protection, in terms of both its language and its intent." Id., p. 15, at 1196-97. The "specific purpose" of La. Const. art. I, § 3 was to provide an expansive view of equal protection that went beyond the protections provided within the federal Constitution. Id., p. 15, at 1197 (citing Devlin, Louisiana Constitutional Law, Developments in the Law, 1989-1990, 51 La. L.Rev. 295, 306 & 310).
[10] This standard is used to analyze statutes that present a legislative classification on their face. We note here that even a facially neutral statute can be deemed unconstitutional if its challenger "can prove that the statute was enacted because of a discriminatory purpose." State v. Baxley, 94-2982, p. 7 (La.5/22/95), 656 So.2d 973, 981; see also Pers. Admin. of Massachusetts v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). In the instant matter, however, defendant has not alleged, nor has the district court found, any discriminatory purpose behind La. R.S. 15:578.1.
[11] See supra, note 4.
[12] By 2001, for example:

The driving age public [saw] drinking and driving as a serious problem that needs to be dealt with. More than three in four (77%) persons [saw] drinking and driving of others as a major threat to the personal safety of themselves and their family.
. . .
More than eight in ten (84%) persons of driving age believe[d] that drinking and driving by people convicted of multiple drinking and driving offenses are a major threat to their personal safety.
. . .
Two-thirds (66%) of persons of driving age [felt] that reducing drunk driving [was] extremely important in terms of where tax dollars should be spent. An additional 27% [felt] it [was] somewhat important.
3 National Highway Traffic Safety Administration, U.S. Department of Transportation, DOT HS-809-551, National Survey of Drinking and Driving Attitudes and Behavior: 2001 35 (2003).
[13] In 1978, when State v. Bradley was issued, La. 44:9(A) provided, in part, that "[a]ny person who has been arrested for the violation of a municipal ordinance or for violation of a state statute which is classified as a misdemeanor . . ." could, by written motion, seek to have his/her arrest record expunged "(2) [i]f prosecution has been instituted, and such proceedings have been finally disposed of by dismissal, sustaining of a motion to quash, or acquittal." La. 44:9(A)(2) explicitly stated, however, that it "[did] not apply to arrests for a first or second violation of any ordinance or statute making criminal the driving of a motor vehicle while under the influence of alcoholic beverages or narcotic drugs, as denounced by R.S. 14:98." While State v. Bradley determined that this part of La. R.S. 44:9(A)(2) was unconstitutional, it nevertheless remains in the statute today.
[14] It should also be noted that, under the minimal standard of equal protection scrutiny applied, the Bradley court appears to have wrongly placed upon the State the burden of proving that the applicable statute was constitutional, rather than upon the defendant to prove that it was not. 360 So.2d 858, 862 (La.1978) ("The State has failed to demonstrate any rational basis for the different treatment afforded D.W.I. misdemeanor arrests.") (emphasis added); but cf. Sibley v. Bd. of Sup'rs of Louisiana State Univ., 477 So.2d 1094, 1107-08 (La. 1985) (stating that a law will be struck down under the minimal standard of equal protection scrutiny only when "a member of a disadvantaged class shows that it does not suitably further any appropriate state interest") (emphasis added).
[15] "D.W.I. offenders" include not just those that chose to operate a vehicle while under the influence of alcohol, but also those that chose to do so under the influence of controlled dangerous substances, legally obtainable drugs, or the combination of drugs and alcohol. See La. R.S. 14:98(A).
[16] La. R.S. 44:9(E)(3)(a) states:

"A court may order the destruction or the expungement of the record of a misdemeanor conviction dismissed pursuant to Article 894 of the Code of Criminal Procedure. However, no destruction of the record shall be ordered for any conviction for a first or second violation of any ordinance or statute making criminal the driving of a motor vehicle while under the influence of alcoholic beverages or narcotic drugs, as denounced by R.S. 14:98 or 98.1".
[17] La. R.S. 44:9(A)(2) provides, in pertinent part, that:

If the court finds that the mover is entitled to the relief sought as authorized by this Subsection, it shall order all agencies and law enforcement offices having any record of the arrest . . . to destroy any record of arrest, photograph, fingerprint, or any other information of any and all kinds or descriptions. The court shall order such custodians of records to file a sworn affidavit to the effect that the records have been destroyed and that no notations or references have been retained in the agency's central repository which will or might lead to the inference that any record ever was on file with any agency or law enforcement office. . . .
[18] See also Med Exp. Ambulance Serv., Inc. v. Evangeline Parish Police Jury, 96-0543, pp. 7-8 (La. 11/25/96), 684 So.2d 359, 365 (stating that, "in areas of social and economic policy, a statutory classification which does not proceed along suspect or semi-suspect lines, nor infringe on fundamental rights, need only be rationally related to a legitimate government interest") (footnotes omitted).