CARAWAY, J.,
dissenting.
11 This case concerns the legislative vote of the elected representatives of the Shreveport City Council for the regulation of the retail selling of alcoholic beverages. Using inappropriate standards of review for a legislative enactment with an obvious public welfare concern, the majority requires the decision of the elected council to *421 demonstrate a heavy “substantial relationship” for protecting the public safety and welfare, and then easily strikes down the council’s safety concerns as “arbitrary and capricious.” I believe the appropriate standard of judicial review is a minimal rational-basis review where any reasonably conceivable state of facts disruptive of the public safety should constrain a court from stopping the council’s employment of such safety measures regarding alcohol sales in the city.
With an express grant of regulatory power from the Louisiana legislature, La. R.S. 26:493, the City is fully empowered as a subdivision of the state to regulate the alcohol business for what is “necessary for the protection of the public health, morals, safety and peace” of the public. Once the elected representatives vote to regulate and limit the retail package liquor outlets for the alcoholic beverage industry, as they have in this case, by what standard of review may this court decide that the city council’s assessment for the public health, morals, safety and peace of its citizens is improper? In fashioning that standard of review, the judiciary can easily make itself a super-city council for city government unless the proper deference is given. That deference is determined primarily by consideration of whether the plaintiffs in this case have a constitutionally protected property interest in the alcoholic beverage permit which the City refused to Rissue. If they have no “property” within the general due process protection of our state and federal constitutions, neither of which otherwise specifically secures a right for the selling of alcoholic beverages, this court’s deference to the city council’s determination of the welfare of its citizens must be great. Likewise, as shown below, similar deference is given to the governmental action in an equal protection claim asserting disparate treatment.
Nevertheless, without consideration of the complete lack of a constitutionally protected “property” interest, the majority now applies a standard of judicial review on par with the standard for review of governmental zoning regulations of land use. The distinction missed by the majority is that land use regulation implicates a constitutionally protected property interest, while regulation of the sale of alcoholic beverages does not. The fundamental protection of one’s “liberty” and “property” under the due process clauses of our state and federal constitutions does not extend to the selling of alcoholic beverages. The Louisiana Supreme Court has repeated in various contexts that “there is no inherent right in a citizen to sell intoxicating liquor.” City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954); State v. Larson, 94-1237 (La.4/10/95), 653 So.2d 1158. Even more important, the legislature itself by the enactment of our local option election laws, La. R.S. 26:581, et seq., recognizes that state action through a vote of the people in local subdivisions may prohibit altogether the sale of alcoholic beverages. Such legislation is presumed constitutional and is therefore reflective of the legislature’s understanding that no fundamental “liberty” or “property” interest is violated by a total ban of alcohol sales. Similarly, the constitutional protection and directives for “land use” and zoning as addressed in Article 6, § 17 of the Louisiana Constitution are not offended by the legislative allowance for the total prohibition of the sale of alcoholic beverages or the regulation thereof.
In addition to its delegation of power to the electorate for the total prohibition of the sale of alcohol, the legislature has delegated the following power of regulation to a municipality:
Except as limited by the provisions of this Chapter the various subdivisions of *422 the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.
La. R.S. 26:493. This authority has allowed Louisiana municipalities to prevent, among other things, the playing of music in a barroom, City of De Ridder v. Mangano, 186 La. 129, 171 So. 826 (1936); keeping a liquor establishment open at certain prohibited times, City of Baton Rouge v. Rebowe, supra; selling of alcohol on Sunday, City of Shreveport v. Belle, 260 La. 1041, 258 So.2d 79 (1972); and persons under age 21 from purchasing alcohol, City of Lafayette v. Elias, 232 La. 700, 95 So.2d 281 (1957).
While the City of Shreveport has enacted by ordinances a particular procedure through its planning commission, zoning board, and city council for the process of approval of a so-called “special exception use” for the sale of alcohol, the City’s basic authority to act regarding alcohol is La. R.S. 26:493, which is its delegated regulatory power from the legislature. The council’s final vote is therefore a legislative action by a political subdivision of the state whose power is an extension of the power of the legislative branch. As our Supreme Court has said, “[i]n considering the City’s authority, it is well settled that the state’s political branches retain plenary authority to do all things not expressly forbidden by the Constitution.” Civil Service Com’n of City of New Orleans v. City of New Orleans, 02-1812, 02-1815 (La.9/9/03), 854 So.2d 322, 326. Under our separation of powers form of government, the judiciary therefore may not overrule this legislative action of the council unless the constitutional protections afforded the plaintiffs against undue governmental intrusion upon their protected rights have been violated.
Such delegation of power to the City was not placed by the legislature under the municipal power for zoning, La. R.S. 33:4721, et seq., but within Title 26, the alcoholic beverage control law. This distinction is most important. The object of this regulatory power being a commercial product, alcohol, the constitutional protection against the over-regulation of private property through land use restrictions is not implicated. In the land use context, the United States Supreme Court jurisprudence regarding the Takings Clause of the Constitution has employed the maxim, “while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.” Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Nevertheless, the public regulation of the trade of alcohol clearly does not involve a confiscatory regulation which “denies all economically beneficial or productive use of land.” See, Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Again, this is not a zoning case or a takings ease for the same reason that substantive due process protection is not present. There is no “property” at stake here under the Fifth and Fourteenth Amendments or any similar protection of our state constitution.
*423 A principal emphasis of the plaintiffs’ argument concerns the City’s regulatory choice to allow liquor sales at allegedly “similarly situated” commercial outlets nearby plaintiffs’ property. Although plaintiffs do not specifically raise a constitutional equal protection challenge to the City’s action, their argument is the same and the law pertaining to equal protection should guide us in our standard of review. “In contrast to a due process action, which looks solely to the government’s exercise of its power vis-a-vis the [claimant], an equal protection claim asks whether a justification exists for the differential exercise of that power.” Mikeska v. City of Galveston, 451 F.3d 376, 381 (5th Cir.2006). The classification claim which plaintiffs’ argument implicitly presents is that their proposed commercial establishment is a “class of one” which has received discriminatory application of the City’s regulatory power.
In Louisiana, the classifications for our equal protection guarantee are set forth in La. Const. art. I, § 3 which provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery Rand involuntary servitude are prohibited, except in the latter case as punishment for crime.
Louisiana’s equal protection standards command the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. State v. Granger, 07-2285 (La.5/21/08), 982 So.2d 779. The discriminatory classification argument plaintiffs now raise falls at best into the third category of our equal protection law. Laws that create classifications in the third situation are presumed to be constitutional and the party challenging the constitutionality of the law has the stringent burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. Id. This minimal rational-basis test comports with the equal protection analysis applied under the Fourteenth Amendment.
In the federal context, the recent ruling of the United States Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), applied equal protection in the so-called “class of one” category for a claim against a municipality’s action. In this case, the municipality required plaintiffs to provide a larger water easement for water service to their property than the prior easements required of others. The court ruled in a per curiam opinion as follows:
Our cases have recognized successful equal protection claims brought by a “class of one,” where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In so doing, we have explained that “[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure *424 every person within the State’s jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.” [Citations omitted]
That reasoning is applicable to this case. Olech’s complaint can fairly be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners. [Citation omitted] The complaint also alleged that the Village’s demand was “irrational and wholly arbitrary” and that the Village ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village’s subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis.
Id. 528 U.S. at 564-565, 120 S.Ct. 1073. In the wake of Olech, the equal protection cases brought by plaintiffs disappointed by state and municipal regulatory decisions have increased, as reviewed extensively in the recent ruling in Lindquist v. City of Pasadena, Texas, 656 F.Supp.2d 662 (S.D.Tx.2009). Instead of an attack on a city’s action in state court, the federal courts under 42 U.S.C. § 1983 are asked to review the regulatory decisions under the equal protection analysis.
In these equal protection claims, the federal courts apply a strict measure of whether “similarly situated” parties are present and receiving favored treatment, and such scrutiny results in the rejection of many “class of one” claims even before the minimal rationality test is employed. Beeler v. Rounsavall, 328 F.3d 813 (5th Cir.2003), cert. denied, 540 U.S. 1048, 124 S.Ct. 820, 157 L.Ed.2d 697 (2003) (the court found that the “similarly situated” requirement as not met in an alcohol regulatory ruling because “whereas [plaintiff] was applying for a new permit, the [parties next door] were applying to renew an existing permit.”); Unique Properties, LLC v. Terrebonne Parish Consolidated Gov’t, 2004 WL 1278001 (E.D.La.2004); and Lindquist v. City of Pasadena, Texas, supra.
In the present case, plaintiffs’ assertion of the “similarly situated” parties and arbitrariness is in essence a claim that after the City’s first issuance of authority to any commercial dispenser of alcohol, no other applicant for such alcoholic beverage allowance can be rejected. As reviewed in our initial ruling, the “hard liquor,” “drive-thru” dispensary now sought by plaintiffs creates a clear distinction revealing that the nearby establishments identified by plaintiffs are not similarly situated.
The second prong for the measure of these class-of-one equal protection claims is the rational-basis test for the governmental action. Under a rational-basis review, a court affords governmental decisions a “strong presumption of validity,” and will uphold a governmental decision “if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” Heller v. Doe by Doe, 509 U.S. 312, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). Rational basis review is an extremely lenient standard of review; therefore “[a]ttacks against zoning ordinances under this test are rarely successful.” Baker v. St. Bernard Parish Council, 2008 WL 4681373 (E.D.La.2008) (quoting Wood Marine Service, Inc. v. City of Harahan, 858 F.2d 1061, 1066 (5th Cir.1988)). Even if the court is convinced that the political branch has made an improvident, ill-advised, or unnecessary decision, it must uphold the act if it bears a *425 rational relation to a legitimate governmental purpose. Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1241 (11th Cir.1991). Rational basis review is “a paradigm of judicial restraint” and “[w]here there are ‘plausible reasons’ for [the government decision], ‘[the] inquiry is at an end.’ ” F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).
Moreover, the city council’s legislative action in classifying the “drive thru,” “hard liquor” business differently from other retail sales outlets did not require the council's articulation of the reasons for its vote. A legislative action that creates a category or “class of one” distinction need not “actually articulate at any time the purpose or rationale supporting its classification.” Nordlinger v. Hahn, 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992). A state, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. Heller v. Doe by Doe, supra at 2643. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. F.C.C. v. Beach Communications, supra at 2098. The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific. Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 68-70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913).
Ignoring this great deference owed to the council’s decision, the majority’s misguided analysis apparently insists that direct evidence of accidents or criminal misconduct must be obtained by the council before a public safety threat can be recognized and acted upon. In its stated opinion, the majority fails “to see how the drive-thru window would necessarily equate to drunk drivers” along this busy thoroughfare of the city. That may reflect a vote the majority might make as council members, but a judicial majority does not have plenary legislative authority. Without direct proof of this threat to the public’s safety, the majority apparently will not allow council consideration of the obvious circumstantial implication that more numerous and convenient liquor sales at this location can present a threat to public safety. That is not a minimal rational-basis measure; it is the substitution of the majority’s speculative opinion for a plausible conclusion that the elected body may reach. The mode of the alcohol sales for the plaintiffs’ proposed establishment and the alcohol content of the products are highly relevant factors for a public safety policy assessment and provide a rational basis for the City to regulate and prohibit this proposed business of selling alcohol for the protection of the public health, morals, safety and peace. Without honoring the separation of power between the council’s plenary legislative authority to govern its municipality and the judiciary, the majority now overrules the city council on the basis that the City should have no fear for safety regarding the effects of this dispensing of alcohol within its jurisdiction.
In As summarized by Professor Shelley Ross Saxer in License to Sell: Constitutional Protection Against State or Local Government Regulation of Liquor Licensing, 22 Hastings Const. L.Q. 441, 487-488 (1995):
Courts will probably not apply a strict scrutiny standard to challenged liquor license regulatory actions, unless such actions disproportionately affect a suspect classification or fundamental right and there is evidence of discriminatory motive. Moreover, since liquor license regulations and land use regulation of liquor outlets affect only the economic interests of the licensee or landowner, *426 the application of a rational relationship standard is appropriate in most instances. Under this standard, the regulatory action will be valid provided a rational basis supports it. One of the greatest justifications for regulatory action is the protection of the health, safety, welfare, and morals of the communities affected by overconcentration of liquor stores. Indeed, the harmful effects that liquor stores have on the communities they serve have become more evident throughout the country. Based on these considerations, it is doubtful that equal protection challenges will be successful against most liquor license regulation.
From the above review, the “arbitrary and capricious” test voiced in our prior cases is, in my opinion, inappropriate as employed for the measure of the goals of public health, safety and morals, all concepts upon which reasonable parties can differ. Thus, a judicial measure or standard of review of whether the city council was arbitrary and capricious with the public welfare is itself vague and somewhat arbitrary, imposing no judicial restraint in its application.[4] Instead, judicial review is better articulated in the “rational 'basis” language employed in the equal protection cases under both our state and federal constitutions. Therefore, the rational-basis standard of review, in my opinion, should be whether the disadvantage imposed upon plaintiffs by the denial of the alcoholic beverage authority in this case does not suitably further any appropriate state interest for the protection of public health, morals, safety and peace of the municipality.
Despite the fact that the plaintiffs have not formally asserted that the vote of the city council was an unconstitutional legislative act depriving them of protected property or arbitrarily classifying them so as to deny the equal protection of the law, the governmental action of the council may not be judicially challenged unless such deprivation of constitutionally-protected rights has occurred. Therefore, the constitutional principles shown above must govern to determine through judicial review if the City’s classification of plaintiffs’ proposed business violated their rights. A rational-basis review is called for in order to foster judicial restraint, which is now absent in the majority’s veto of the elected representatives’ action on behalf of the City of Shreveport. Had this case and the companion case now in this court, Racetrac Petroleum, Inc. v. City of Shreveport (45,120-CA), 45,120 (La.App.2d Cir.7/21/10), 2010 WL 2836901, — So.3d -, been brought instead in the federal courts for the same review of the city council’s rulings, this minimal rationality test would likewise apply giving to the City’s action the strong presumption of validity. This anomaly between the majority’s measure of state action and the federal court rulings for identical disputes must end. The required deference has now been masked over by the vagueness of an “arbitrary and capricious” test imposed without judicial credit in this case to the plausible reasons for the elected representatives’ actions in regulating the alcohol beverage business. *427 It is clear to me that had these plaintiffs initiated these same challenges to the City of Shreveport in federal court, the outcome would be completely different because of the special deference to the elected body that would be given under the appropriate rational-basis standard of review.

. As cited in our original ruling, the initial ruling of the Louisiana Supreme Court following Prohibition allowed the Louisiana municipalities under the authority of La. R.S. 26:493 to enact regulations with "some relation to the welfare of the community.” City of De Ridder v. Mangano, supra. Our initial opinion articulated this minimal rationality standard at times, but also voiced an "arbitrary and capricious” standard of review which I now find unhelpful. The municipality’s action may be said to be "arbitrary and capricious” only after a finding that no rational basis for the differential treatment exists.